[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 29, 2004
THOMAS K. KAHN
CLERK**

———————————————

No. 03-14584

———————————————

D. C. Docket No. 03-00150-CR-T-30-EAJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SCOTT INCLEMA,

Defendant-Appellant.

———————————————

Appeal from the United States District Court
for the Middle District of Florida

———————————————

**(March 29, 2004)**

Before TJOFLAT, RONEY and FAY Circuit Judges.

PER CURIAM:

This case involves the interpretation and application of United States

Sentencing Guidelines §§ 2B1.1 and 2B5.1.  Defendant Scott Inclema pleaded guilty

to one count of making counterfeit Federal Reserve Notes, in violation of 18 U.S.C. § 471, and one count of transferring counterfeit Federal Reserve Notes, in violation of 18 U.S.C. § 473. The district court held that U.S.S.G. § 2B5.1, entitled "Offenses Involving Counterfeit Bearer Obligations of the United States" applied, and sentenced Inclema to concurrent terms of thirty-seven months' imprisonment. Inclema argues that because he merely "altered" genuine Federal Reserve Notes, the district court erroneously applied § 2B5.1, instead of § 2B1.1, which would have resulted in less imprisonment. After *de novo* review and oral argument, we reverse and vacate Inclema's sentence, holding that because Inclema began his counterfeiting process with genuine Federal Reserve Notes and ended up with Federal Reserve Notes with a different face value, he, by definition, only "altered" the Federal Reserve Notes, which thus requires application of § 2B1.1, and in any event, because of ambiguity in the guidelines, the rule of lenity should apply.

The facts of this case are straightforward. A confidential informant advised the Lakeland Police Department that Inclema had both brought counterfeiting equipment to a motel room and that he had been previously involved with counterfeiting. The case was referred to the United States Secret Service, where an Agent thereafter interviewed the informant. The informant had advised the Agent that Inclema was bleaching lower-denomination genuine Federal Reserve Notes and then transferring

2

an image of higher-denomination Federal Reserve Notes onto that bleached Federal Reserve Note paper with the use of a computer printer.

Agents searched Inclema's motel room revealing illegal drugs, $2,480 in counterfeit currency made from bleached Federal Reserve Notes, and two all-in-one printer/copier/scanners. Inclema later admitted that he had conspired to produce and traffic in counterfeit United States currency.

The Pre-Sentence Investigation Report ("PSR") recommended that Inclema be assessed a base offense level of nine pursuant to § 2B5.1, a four-level upward adjustment under § 2B5.1(b)(1) based on the face value of the counterfeit Federal Reserve Notes, as well as a two-level upward adjustment pursuant to § 2B5.1(b)(2)(A). With a two-level downward adjustment for Inclema's acceptance of responsibility, the PSR recommended a total offense level of 13, a criminal history category of V, resulting in a recommended sentencing range of 30 to 37 months' imprisonment.

Inclema objected at the sentencing hearing to the application of § 2B5.1, arguing that § 2B1.1 should instead apply because his offenses had involved the alteration of genuine instruments, rather than completely making or manufacturing wholly false instruments. The district court rejected Inclema's argument, stating that

"when he bleaches the paper he is starting from scratch and he's counterfeiting Federal Reserve notes."

Inclema argues that had the district court sustained his objections to § 2B5.1, his total offense level pursuant to § 2B1.1 would have been four, meriting a sentencing range of four to ten months' imprisonment, which is approximately 24 to 34 months less than the 37 months to which he was sentenced.

In construing the Sentencing Guidelines, we first begin with its language, considering both the text of the guidelines and the accompanying commentary. *United States v. Panfil,* 338 F.3d 1299, 1302 (11th Cir. 2003). The "'commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.'" *United States v. Matos-Rodriguez*, 188 F.3d 1300, 1310 n.20 (11th Cir. 1999) (quoting *Stinson v. United States*, 508 U.S. 36, 38 (1993)). Language in the Sentencing Guidelines is to be given its plain and ordinary meaning. *United States v. Singh*, 291 F.3d 756, 761 (11th Cir. 2002). Where the guidelines provide no indication as to a particular application, we look to the language and purpose of the Sentencing Guidelines for instruction. 291 F.3d at 761.

Under the specific facts and circumstances of this case, Inclema "altered" Federal Reserve Notes, requiring application of § 2B1.1. Section 2B5.1, the

sentencing guideline to which Inclema was sentenced, is entitled "Offenses Involving Counterfeit Bearer Obligations of the United States." U.S.S.G. § 2B1.1 (Nov. 2002). The section's commentary states that offenses involving genuine instruments that have been altered are to be sentenced under the provisions of § 2B1.1 and those that are manufactured in their entirety are to be sentenced under § 2B5.1. "'Counterfeit,' as used in this section, means an instrument that purports to be genuine but is not, because it has been falsely made or *manufactured in its entirety*. Offenses involving genuine instruments that have been *altered* are covered under § 2B1.1 (Theft, Property, Destruction, and Fraud)." *Id.* § 2B5.1 comment. (n.3) (emphasis supplied). Likewise, the title to § 2B1.1 says that it applies to offenses involving "altered" instruments, "Larceny, Embezzlement, and Other Forms of Theft; Offenses Involving Stolen Property; Property Damage or Destruction; Fraud and Deceit; Forgery; Offenses involving Altered or Counterfeit Instruments Other than Counterfeit Bearer Obligations." *Id*. § 2B1.1. The critical issue, therefore, is whether the instruments here were "altered" or manufactured in their entirety.

Webster's Dictionary defines "alter" as follows, "to cause to become different in some particular characteristic (as measure, dimension, course, arrangement, or inclination) without changing into something else." Webster's Third New International Dictionary 63 (15th ed. 1966); Webster's New World Dictionary 40 (3d

ed. 1983) (defining "alter" as "to make different in details but not in substance; modify"); *see also Smith v. United States*, 74 F.2d 941, 942 (5th Cir. 1935) (citing Webster's Dictionary and defining the verb "alter" as "to change without destroying the identity of the thing changed").

Inclema started with Federal Reserve Notes and ended up with Federal Reserve Notes of a higher denomination. *See United States v. Hall*, 801 F.2d 356, 359 (8th Cir. 1986) (noting that an "altered obligation" is one that is "intended to be used in the same manner but as a higher denomination," and holding that a $10 bill changed to appear to be a $100 bill was altered). Stated differently, he started with Federal Reserve Notes, modified them by bleaching and re-printing on their surface, but nonetheless ended with Federal Reserve Notes, rather than starting from a bare piece of paper, which would have never been a Federal Reserve Note in the first instance. Therefore, he only altered them because the end result of his tactics never actually changed them into something other than Federal Reserve Notes, as the plain meaning of note 3 of § 2B5.1 would so require. *See Smith*, 74 F.2d at 942 (affirming conviction of possession of an altered obligation – the back half of split $1 U.S. silver certificate – and noting "Under that definition it seems clear that the government obligation described in the indictment was, within the meaning of the statute, altered, although it may also have been mutilated."); *Barbee v. United States*, 392 F.2d 532

6

(5th Cir. 1968) (genuine bill with serial number changed is an altered note). Since the process that Inclema used to create higher denomination Federal Reserve Notes was, by definition, altering an existing Federal Reserve Note and it never actually changed the Federal Reserve Note "into something else," the district court's application of § 2B5.1 was thus error.

Our decision is consistent with other circuits that have applied § 2B5.1 only to circumstances where a counterfeiter started with something other than a Federal Reserve Note – *i.e.*, a piece of paper that was never a Federal Reserve Note in the first instance – and ended up with a counterfeit Federal Reserve Note. *See, e.g.*, *United States v. Kelly*, 204 F.3d 652, 657 (6th Cir. 2000) (affirming application of § 2B5.1 for defendant who printed Federal Reserve Note on paper that was never a Federal Reserve Note in the first instance, and noting that counterfeit means something that has been "falsely made or manufactured in its entirety [as opposed to genuine instruments that have merely been altered]"); *United States v. Taftsiou*, 144 F.3d 287 (3d Cir. 1998) (affirming application of § 2B5.1 for defendant who printed Federal Reserve Notes on large sheet of sophisticated computer printer, and then cut that paper with a high-end commercial paper cutter); *United States v. Ramacci*, 15 F.3d 75 (7th Cir. 1994) (affirming application of § 2B5.1 for defendant who printed Federal Reserve Note on plain paper).

The government contends that once Inclema had bleached the Federal Reserve Notes, they became "very nice pieces" of "currency quality paper." The paper that resulted from Inclema's bleaching process, however, was the same size, shape, thickness, and texture of the original Federal Reserve Note paper. More importantly, the bleached paper was exactly the "distinctive paper" used by the United States Treasury to print Federal Reserve Notes, possession of which alone without the authority of the Secretary of the Treasury is a felony. *See* 18 U.S.C. § 474A. None of the cases cited by the Government applying § 2B5.1 involved the printing of U.S. currency on genuine Federal Reserve Note paper on an individual note by note basis. *See, e.g., United States v. Hughes*, 310 F.3d 557 (7th Cir. 2002) (defendants used Hewlett Packard inkjet printer, bonded paper, and colored ink to produce counterfeit currency); *United States v. Baronia*, 287 F.3d 607 (7th Cir. 2002) (defendant scanned fronts and backs of genuine $1, $5, $10, and $20 bills onto computer and then printed, cut, and crumpled copies to give them an aged appearance); *United States v. Wyjack*, 141 F.3d 181 (5th Cir. 1998) (defendant used color copier/printer to produce counterfeit $20 bills); *United States v. Webster*, 108 F.3d 1156 (9th Cir. 1997) (defendant printed counterfeit $20 bills with a color copier on 8 1/2" x 11" paper sheets); *United States v. Stanley*, 23 F.3d 1084 (6th Cir. 1994) (defendants used sophisticated laser color copier to manufacture counterfeit Federal Reserve Notes);

*United States v. Gaither*, 1 F.3d 1040 (10th Cir. 1993) (defendant photocopied $20 bills onto green colored paper and used green dye and green marking pens to make them more realistic); *United States v. Taylor*, 991 F.2d 533 (9th Cir. 1993) (defendant used black-and-white office copier to counterfeit Federal Reserve Notes); *United States v. Bruning*, 914 F.2d 212 (10th Cir. 1990) (defendant used color office copier, green ink, and other materials to counterfeit notes).

At most, the government's argument would indicate ambiguity in the sentencing guidelines as to the difference between an instrument that "has been falsely made or manufactured in its entirety" and "genuine instruments that have been altered." § 2B5.1 comment. (n.2). The Supreme Court has stated that when there are two rational readings of a criminal statute, one harsher than the other, the rule of lenity dictates that we are to choose the harsher one only when Congress has spoken "in language that is clear and definite." *United States v. Bass,* 404 U.S. 336, 347 (1971); *see also United States v. Jeter*, 329 F.3d 1229, 1230 (11th Cir. 2003) (noting that the "rule of lenity" applies if a statute – in this instance, a sentencing guideline – is ambiguous").

Further ambiguity that would call for the application of the rule of lenity under the facts and circumstances of this case is found in the commentary of each of the sentencing guidelines. The "'commentary in the Guidelines Manual that interprets

or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.'" *United States v. Matos-Rodriguez*, 188 F.3d 1300, 1310 n.20 (11th Cir. 1999) (quoting *Stinson v. United States*, 508 U.S. 36, 38 (1993)). Section 2B5.1's commentary states, "Offenses involving genuine instruments that have been altered are covered under § 2B1.1." § 2B5.1 comment. (n.2). In § 2B1.1's "Introductory Commentary," however, it states that the section "address[es] . . . counterfeiting (other than offenses involving altered or counterfeit bearer obligations of the United States)." § 2B1.1 intro. comment. The plain language of these two commentaries thus contradict each other, resulting in an ambiguous application under the facts of this case. Thus, the rule of lenity would dictate that Inclema should have been sentenced under § 2B1.1.

Until the sentencing guidelines and their accompanying commentaries are made to be more precise, defendants who start with genuine paper currency and modify it by whatever means for the purpose of creating non-genuine currency should be sentenced under § 2B1.1.

Because we hold that § 2B1.1 applies, we need not consider Inclema's arguments relating to the improper application of the various enhancements under §

10

2B5.1. Inclema's sentence is vacated and remanded for resentencing with application of § 2B1.1.

VACATED AND REMANDED FOR RESENTENCING.