PRYOR, Circuit Judge,
concurring, in which FAY, Circuit Judge, joins:
I concur fully in the majority opinion. I agree that we have no occasion to apply the rule of lenity in this appeal because section 4A1.2(k)(l) of the Sentencing Guidelines is unambiguous, but I write separately to explain why I doubt the rule of lenity should play any role in our interpretation of advisory Sentencing Guidelines.
This Court has invoked the rule of lenity to interpret ambiguous provisions of the Sentencing Guidelines on two occasions, both when the Guidelines were mandatory, but we have never explained whether applying the rule of lenity to the Guidelines serves the purposes that underlie the rule. See United States v. Inclema, 363 F.3d 1177, 1182 (11th Cir.2004); United States v. Rolande-Gabriel, 938 F.2d 1231, 1237-38 (11th Cir.1991). Those purposes are to “ensure[] that criminal statutes will provide fair warning concerning conduct rendered illegal and strike[] the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability.” Liparota v. United States, 471 U.S. 419, 427, 105 S.Ct. 2084, 2089, 85 L.Ed.2d 434 (1985).
The decision of the Supreme Court in United States v. Booker weakened the logic that might have supported our application of the rule of lenity to mandatory Sentencing Guidelines because that decision made the Guidelines advisory. 543 U.S. 220, 259, 125 S.Ct. 738, 764, 160 L.Ed.2d 621 (2005). Whether we should continue to apply the rule of lenity to advisory Sentencing Guidelines is an open question in this Circuit. That question warrants careful consideration when it is presented to this Court.
The rule of lenity is a canon of statutory construction that requires courts to construe ambiguous criminal statutes narrowly in favor of the accused. See United States v. Wiltberger, 18 U.S. (5 Wheat.) 76, 95, 5 L.Ed. 37 (1820). In England, courts strictly construed criminal laws “to protect the common criminal from capital punishment.” Phillip M. Spector, The Sentencing Rule of Lenity, 33 U. Tol. L.Rev. 511, 518 (2002). Although the rule of lenity has its roots in seventeenth century England, see Livingston Hall, Strict or Liberal Construction of Penal Statutes, 48 Harv. L.Rev. 748, 749-50 (1935), American courts later applied the rule for distinctly American reasons, which were “forged in the furnace of American constitutionalism.” Spector, supra, at 521.
Chief Justice John Marshall explained that the rule of lenity serves two constitutional principles — due process of law and separation of powers:
The rule that penal laws are to be construed strictly, is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department. It is the legis *717 lature, not the Court, which is to define a crime, and ordain its punishment.
Wiltberger, 18 U.S. (5 Wheat.) at 95. The rule respects the rights of individuals by requiring fair warning of “ ‘what the law intends to do if a certain line is passed.’ ” United States v. Bass, 404 U.S. 336, 348, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971) (quoting McBoyle v. United States, 283 U.S. 25, 27, 51 S.Ct. 340, 341, 75 L.Ed. 816 (1931)). And the rule protects the balance of power among the three branches of government by reserving to the legislature the task of determining what conduct to prohibit and what punishment to impose. Id., 92 S.Ct. at 523. When courts construe ambiguous criminal statutes in favor of the accused, the judicial branch refrains from expansively interpreting criminal statutes so as to prohibit more conduct or punish more severely than Congress intended. See Ladner v. United States, 358 U.S. 169, 177-78, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958).
Consistent with these animating concerns, the Supreme Court has applied the rule of lenity “not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose.” Bifulco v. United States, 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980); see also United States v. R.L.C., 503 U.S. 291, 305, 112 S.Ct. 1329, 1338, 117 L.Ed.2d 559 (1992). Bifulco involved the interpretation of a penalty provision of the Comprehensive Drug Abuse Prevention and Control Act of 1970. 447 U.S. at 382-83, 100 S.Ct. at 2250. That provision stated the penalty for conspiracy as “imprisonment or fine or both” and limited the maximum punishment for conspiracy to the maximum punishment available for the substantive target offense. Id. at 385,100 S.Ct. at 2251. The question before the Court was whether the provision permitted the imposition of a special parole term. Id. at 382-83, 100 S.Ct. at 2250. Because Congress had not unambiguously “authorize[d] special parole terms as punishment for those convicted of drug conspiracies,” the Supreme Court strictly construed the provision in favor of the accused and held that it did not permit the imposition of a term of special parole. Id. at 400-01,100 S.Ct. at 2259.
More recently, the Supreme Court invoked the rule of lenity in construing the phrase “original sentence” in a provision of the Anti-Drug Abuse Act of 1988, which provided that “if a defendant is found by the court to be in possession of a controlled substance ... the court shall revoke the sentence of probation and sentence the defendant to not less than one-third of the original sentence.” United States v. Granderson, 511 U.S. 39, 44, 54, 114 S.Ct. 1259, 1263, 1267-68, 127 L.Ed.2d 611 (1994) (internal quotation marks and emphasis omitted). The Supreme Court concluded that the phrase “original sentence” was ambiguous and held that “original sentence” refers to the sentence of imprisonment that the district court had authority to impose under the Guidelines, not to the original sentence of probation that the district court actually imposed. Id. at 54, 114 S.Ct. at 1267-68. As these decisions illustrate, when courts are unable to discern what punishment Congress intended to impose, they must resolve ambiguity in the statute “against the imposition of a harsher punishment.” Bell v. United States, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955).
Although the Supreme Court frequently has applied the rule of lenity to ambiguous criminal statutes, it has not considered whether the rule of lenity applies to the Sentencing Guidelines. As originally enacted, the Sentencing Reform Act of 1984 established the Sentencing Commission “as an independent commission in the judi *718 cial branch,” directed the Commission to “devise guidelines to be used for sentencing,” and required sentencing courts to impose sentences within the applicable guidelines ranges. Mistretta v. United States, 488 U.S. 361, 367-68, 109 S.Ct. 647, 652-53, 102 L.Ed.2d 714 (1989) (internal quotation marks omitted). Because the Act made the Guidelines mandatory, the Supreme Court “consistently held that the Guidelines ha[d] the force and effect of laws.” Booker, 543 U.S. at 234, 125 S.Ct. at 750.
After the enactment of the Sentencing Reform Act, this Court and nearly all of our sister circuits held or stated in dicta that the rule of lenity applies to ambiguous provisions of the then mandatory Sentencing Guidelines. See Inclema, 363 F.3d at 1182; United States v. Simpson, 319 F.3d 81, 86-87 (2d Cir.2002); United States v. Fenton, 309 F.3d 825, 828 n. 3 (3d Cir.2002); United States v. Boucha, 236 F.3d 768, 776 (6th Cir.2001); United States v. Gay, 240 F.3d 1222, 1232 (10th Cir.2001); United States v. Bowen, 127 F.3d 9, 13-15 (1st Cir.1997); United States v. FuentesBarahona, 111 F.3d 651, 653 (9th Cir.1997); United States v. Lazaro-Guadarrama, 71 F.3d 1419, 1421 (8th Cir.1995); United States v. Cutler, 36 F.3d 406, 408 (4th Cir.1994); United States v. Burke, 888 F.2d 862, 866 (D.C.Cir.1989). Only the Second Circuit offered an explanation for its decision to apply the rule of lenity to the Sentencing Guidelines. See Simpson, 319 F.3d at 86. After observing that the purposes of the rule of lenity are to promote fair notice, decrease the risk of arbitrary enforcement, and to maintain the proper balance of powers, the Second Circuit summarily concluded that “[ajpplieation of the rule of lenity to the Guidelines promotes these goals.” Id. at 87.
The Seventh Circuit disagreed and held that the rule of lenity does not apply to the Sentencing Guidelines. United States v. Mrazek, 998 F.2d 453, 455 (7th Cir.1993) (Easterbrook, J.); see also United States v. White, 888 F.2d 490, 497-98 (7th Cir.1989) (Easterbrook, J.), abrogated on other grounds by Stinson v. United States., 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). In an opinion by Judge Frank Easterbrook, the Seventh Circuit distinguished the Sentencing Guidelines from criminal statutes by explaining that the Guidelines “set neither maximum nor minimum penalties” and only “structure and confine the ways in which judges exercise discretion in sentencing.” White, 888 F.2d at 498. The Seventh Circuit considered the purposes that underlie the rule of lenity and concluded that they were not in play: “We are not at risk of imposing penalties greater than Congress authorized, or of inducing the ultracautious to abstain from lawful activities that might be confused with the subjects of the statute; we are not worried about the adequacy of notice.” Id.
The reasoning of the Seventh Circuit in White relied in part on an assumption that the Sentencing Guidelines did not set minimum or maximum penalties and that judicial interpretation of the Guidelines did not present a risk that a court would impose a sentence greater than Congress had permitted, see id. at 498, but that assumption was debatable when the Guidelines were mandatory. As the Supreme Court explained one year after the Seventh Circuit decided White, “[t]he answer to any suggestion that the statutory character of a specific penalty provision gives it primacy over administrative sentencing guidelines is that the mandate to apply the Guidelines is itself statutory.” R.L.C., 503 U.S. at 297, 112 S.Ct. at 1334. Because Congress required sentencing courts to apply the Sentencing Guidelines and impose a sentence within the applicable guidelines range, it was reasonable to view the Guide *719 lines as effectively setting minimum and maximum penalties that varied based on the circumstances of the offense and the characteristics of the offender.
When this Court invoked the rule of lenity to interpret ambiguous provisions of the Sentencing Guidelines, the Guidelines were mandatory. See Inclema, 363 F.3d at 1182; Rolande-Gabriel, 938 F.2d at 1238. Even if we were correct to apply the rule of lenity to mandatory Sentencing Guidelines, those decisions no longer bind us because the Supreme Court made the Guidelines advisory in Booker, 543 U.S. at 259, 125 S.Ct. at 764. Although they still must take account of the Guidelines, pertinent policy statements, and the purposes of sentencing, district courts no longer are statutorily required to impose a sentence within the guidelines range. Id. We have not applied the rule of lenity to the Sentencing Guidelines since Booker, nor have we considered whether we should. Whether the rule of lenity applies to advisory Sentencing Guidelines is an open question in this Circuit.
In my view, it is doubtful that the judicial interpretation of advisory Sentencing Guidelines promulgated by an independent commission implicates either of the twin concerns that motivate the rule of lenity. The first concern- — fair warning— is not at issue because the Guidelines “do not bind or regulate the primary conduct of the public.” Mistretta, 488 U.S. at 396, 109 S.Ct. at 667. The concern about fair warning is rooted in “the belief that fair warning should be accorded as to what conduct is criminal and punishable by deprivation of liberty or property.” Huddleston v. United States, 415 U.S. 814, 831, 94 S.Ct. 1262, 1272, 39 L.Ed.2d 782 (1974). The Sentencing Guidelines do not make any conduct criminal, so “[w]e are not at risk of ... inducing the ultracautious to abstain from lawful activities that might be confused with the subjects of the statute.” White, 888 F.2d at 498. The Sentencing Guidelines come into play only after someone has been convicted of a criminal offense. The second concern — separation of powers — also is not at issue. The rule of lenity promotes separation of powers by reserving to Congress the power to “define a crime, and ordain its punishment.” See Wiltberger, 18 U.S. (5 Wfiieat.) at 95. As explained above, the Sentencing Guidelines do not define crimes, so we are not at risk of usurping that congressional prerogative. Nor do advisory Sentencing Guidelines ordain punishments for the various criminal offenses. After Booker, the fetters that Congress had placed on the discretion of district courts to sentence within the statutory range are no longer binding. Sentencing courts are free to impose any sentence within the statutory range established by Congress, subject to appellate review for reasonableness. See Booker, 543 U.S. at 264, 125 S.Ct. at 767. Consequently, our interpretation of advisory Sentencing Guidelines presents no risk that we will “impos[e] penalties greater than Congress authorized.” White, 888 F.2d at 498. It is still true that “[o]ur interpretation of sentencing guidelines and accompanying commentary is governed by traditional rules of statutory construction,” United States v. Perez, 366 F.3d 1178, 1182 (11th Cir.2004), but the purposes of the rule of lenity suggest that it plays no role in the interpretation of advisory guidelines.
We need not construe an ambiguous provision of the Sentencing Guidelines strictly or liberally. Instead, we should construe it “reasonably, to contain all that it fairly means.” Antonin Scalia, A Matter of Interpretation: Federal Courts and the Law 23 (1997). As Judge Easterbrook put it, “Our task is to find the best reading of *720 the text, without a thumb on the scale.” Mrazek, 998 F.2d at 455.