[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-13338-J
_____

IN RE LEONARD SAPP,

Petitioner.

_____

Application for Leave to File a Second or Successive
Motion to Vacate, Set Aside,
or Correct Sentence, 28 U.S.C. § 2255(h)
_____

Before JORDAN, ROSENBAUM, and JILL PRYOR, Circuit Judges.

B Y  T H E  P A N E L:

Pursuant to 28 U.S.C. §§ 2255(h) and 2244(b)(3)(A), Leonard Sapp has filed

an application seeking an order authorizing the district court to consider a second

or successive motion to vacate, set aside, or correct his federal sentence, 28 U.S.C.

§ 2255.  Such authorization may be granted only if this Court certifies that the

second or successive motion contains a claim involving:

(1) newly discovered evidence that, if proven and viewed in
light of the evidence as a whole, would be sufficient to establish by
clear and convincing evidence that no reasonable factfinder would
have found the movant guilty of the offense; or

1

> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h). "The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection." *Id.* § 2244(b)(3)(C); *see also Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1357–58 (11th Cir. 2007) (explaining that this Court's determination that an applicant has made a *prima facie* showing that the statutory criteria have been met is simply a threshold determination).

In his application, Mr. Sapp indicates that he wishes to raise one claim in a second or successive § 2255 motion. Mr. Sapp asserts that his claim relies upon a new rule of constitutional law, specifically *Johnson v. United States*, 576 U.S. __, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015), and *Welch v. United States*, 578 U.S. __, ___, 136 S. Ct. 1257, 1264-65, __ L. Ed. 2d __ (2016). He argues that, pursuant to *Johnson*, the mandatory career offender enhancement applied to his sentence, imposed in January 2003, is unconstitutional.

The Armed Career Criminal Act ("ACCA") defines a violent felony as any crime punishable by imprisonment for a term exceeding one year that: (1) has as an element the use, attempted use, or threatened use of physical force against the person of another; (2) is burglary, arson, or extortion, or involves use of explosives;

2

or (3) otherwise involves conduct that presents a serious potential risk of physical injury to another. 18 U.S.C. § 924(e)(2)(B); *Mays v. United States*, 817 F.3d 728, 730–31 (11th Cir. 2016). These three "clauses" are known as the "elements clause," the "enumerated clause," and the "residual clause," respectively. *Mays*, 817 F.3d at 731.

Section 4B1.1 of the Sentencing Guidelines provides that a defendant is classified as a career offender if he (1) was at least 18 years old at the time of the offense of conviction; (2) the offense of conviction was either a crime of violence or a controlled-substance offense; and (3) he had at least two prior felony convictions of either a crime of violence or a controlled-substance offense. U.S.S.G. § 4B1.1(a). The guidelines define "crime of violence" as any offense under federal or state law that is punishable by imprisonment for more than one year and:

(1)    has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2)    is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a).

On June 26, 2015, the Supreme Court in *Johnson* held that the residual clause of the ACCA is unconstitutionally vague because it creates uncertainty about how to evaluate the risks posed by a crime and how much risk it takes to

3

qualify as a violent felony. *Johnson*, 576 U.S. at ___, 135 S. Ct. at 2557–58, 2563. The Supreme Court clarified that, in holding that the residual clause is void, it did not call into question the application of the elements clause and the enumerated crimes of the ACCA's definition of a violent felony. *Id.* at ___, 135 S. Ct. at 2563.

On April 18, 2016, the Supreme Court held in *Welch* that *Johnson* announced a new substantive rule that applies retroactively to cases on collateral review. *Welch*, 578 U.S. at ___, 136 S. Ct. t 1264–65.

In *United States v. Matchett*, 802 F.3d 1185 (11th Cir. 2015), we held that the holding of *Johnson* does not apply to the career-offender guideline, and the guideline is not unconstitutionally vague. *Matchett* was an advisory-Guidelines case. In *In re Griffin*, No. 16-12012, 2016 WL 3002293 (11th Cir. May 25, 2016), we held that our reasoning in *Matchett* applied with equal force to the residual clause of the career-offender guideline in the context of the mandatory Guidelines. The Supreme Court has recently granted certiorari in *Beckles v. United States*, 616 F. App'x 415 (11th Cir. 2015), *cert. granted*, No. 15-8544 (U.S. June 27, 2016), which raises the question of whether *Johnson* applies to the Guidelines. While we respectfully disagree with the holding of *Griffin*, we are nonetheless bound by that decision.

As a result, Mr. Sapp has not satisfied the statutory criteria for filing a successive § 2255 motion. First, even though the Supreme Court has held in

*Welch* that *Johnson* applies retroactively to cases on collateral review, our binding precedent holds that *Welch* does not make *Johnson* retroactive for purposes of filing a successive § 2255 motion raising a *Johnson*-based challenge to the Sentencing Guidelines.  *See Griffin*, 2016 WL 3002293, at *5.  Furthermore, Mr. Sapp cannot make a *prima facie* showing that *Johnson* applies to him in light of our holding in *Griffin* that the mandatory Sentencing Guidelines cannot be unconstitutionally vague.  *See Griffin*, 2016 WL 3002293, at *4.

Accordingly, because Mr. Sapp has failed to make a *prima facie* showing of the existence of either of the grounds set forth in 28 U.S.C. § 2255(h), his application for leave to file a second or successive motion is hereby DENIED.

JORDAN, ROSENBAUM, and JILL PRYOR, Circuit Judges, concurring.

Leonard Sapp was sentenced as a career offender in 2003, before the Supreme Court ruled in *United States v. Booker*, 543 U.S. 220 (2005), that the mandatory Sentencing Guidelines were unconstitutional.  As a result of *Booker*, the Sentencing Guidelines are now advisory, and district courts have broad discretion to impose a sentence inside or outside the recommended Guidelines range.  *See Gall v. United States*, 552 U.S. 38, 49 (2007).  But in the era before *Booker* was decided, the Sentencing Guidelines were "binding on judges."  *Booker*, 543 U.S. at 234.  Indeed, district courts were statutorily required to impose sentences within the range established by the Guidelines.  *See* 18 U.S.C. 3553(b)(1) (2000 ed.) ("the court *shall* impose a sentence of the kind, and within the range" established by the Guidelines) (emphasis added).  *See also United States v. R.L.C.*, 503 U.S. 291, 297 (1992) (explaining, pre-*Booker*: "The answer to any suggestion that the statutory character of a specific penalty provision gives it primacy over administrative sentencing guidelines is that the mandate to apply the Guidelines is itself statutory.").  As a result, the Supreme Court told us, "the fact that the Guidelines were promulgated by the Sentencing Commission, rather than Congress, lacks constitutional significance."  *Booker*, 543 U.S. at 237.  In sum, the mandatory Sentencing Guidelines had "the force and effect of laws."  *Id.* at 234.

Although the mandatory Sentencing Guidelines operated to cabin the

6

discretion of judges, just like sentencing statutes passed by Congress, a panel of our Court recently held that the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), which struck down the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e), as unconstitutionally vague, does not apply to the identical residual clause of the mandatory career offender guideline, U.S.S.G. § 4B1.2(a)(2) (2003). *See In re Griffin*, No. 16-12012, __ F.3d __, 2016 WL 3002293 (11th Cir. May 25, 2016). The *Griffin* panel also concluded that, even if *Johnson* did apply to the residual clause of the mandatory career offender guideline, the Supreme Court's decision in *Welch v. United States*, 136 S. Ct. 1257 (2016)—which held that *Johnson* was retroactive to cases on collateral review— did not make *Johnson* retroactive in cases involving challenges to the Sentencing Guidelines. Although we are bound by *Griffin*, we write separately to explain why we believe *Griffin* is deeply flawed and wrongly decided.

1.      The *Griffin* panel said that it was bound by our prior decision in *United States v. Matchett*, 802 F.3d 1185 (11th Cir. 2015). *See Griffin*, 2016 WL 3002293, at *4. But the *Griffin* panel was not bound by *Matchett*, whose holding, in no uncertain terms, applied only to the advisory Sentencing Guidelines. *See Matchett*, 802 F.3d at 1193 ("The vagueness doctrine does not apply to advisory Sentencing Guidelines."); *id.* at 1195 ("[A]dvisory guidelines that inform a sentencing judge's discretion . . . cannot violate the notice requirement.").

2.     The *Griffin* panel reasoned that "the logic and principles established in *Matchett*" compelled the conclusion that the mandatory Sentencing Guidelines could not be challenged under *Johnson*.  *See Griffin*, 2016 WL 3002293, at \*4. This makes little sense, however, because the holding in *Matchett* hinged on the advisory nature of the Guidelines post-*Booker*.  *See Matchett*, 802 F.3d at 1194 ("Any expectations subject to due process protection . . . that a criminal defendant would receive a sentence within the presumptively applicable guideline range did not survive [the] decision in *United States v. Booker*.") (citation omitted).

*Matchett* explained that the advisory Guidelines "are merely the starting point and the initial benchmark, designed to assist the sentencing judge in determining a sentence."  *Matchett*, 802 F.3d at 1194 (internal quotation marks, citations, and ellipses omitted).  It emphasized that "[t]he sentencing judge's authority to exercise discretion distinguishes the Guidelines from criminal statutes in a significant and undeniable manner."  *Id.* (quoting *United States v. Tichenor*, 683 F.3d 358, 364 (7th Cir. 2012)).  And *Matchett* distinguished precedent from another circuit because it dealt with the mandatory, and not the advisory, Guidelines.  *See Matchett*, 802 F.3d at 1196 ("[T]he Ninth Circuit has stated, in dicta, that the Sentencing Guidelines can be void for vagueness, but that decision was issued when the guidelines were still mandatory.").

By failing to recognize a distinction between the mandatory and advisory

8

Sentencing Guidelines, the *Griffin* panel stretched *Matchett* beyond recognition. The principle underlying *Matchett*—that the advisory Guidelines do not fix sentences because district courts are permitted, and indeed obligated, to exercise discretion in sentencing—simply does not map onto the mandatory Guidelines in any way. Given the binding nature of the mandatory Guidelines, the *Griffin* panel could not rely on the *Matchett* rationale to justify its failure to apply the notice requirement of the Due Process Clause and corresponding vagueness principles. *Cf. United States v. Lee*, ___ F.3d ___, 2016 WL 2638364, at *10 (9th Cir. May 6, 2016) (Ikuta, J., dissenting) (direct appeal case challenging a career offender sentence under the discretionary Guidelines: "In light of the fact that the discretionary Sentencing Guidelines do not raise the same constitutional concerns as mandatory sentencing provisions, I would conclude that any vagueness in the § 4B1.2 residual clause does not violate the Due Process Clause.").

We have recognized a distinction between the mandatory and advisory Guidelines in cases discussing the rule of lenity, a canon of statutory construction that the Supreme Court has called a "junior version of the vagueness doctrine" because it is similarly concerned with providing fair warning to criminal defendants. *See United States v. Lanier*, 520 U.S. 259, 266 (1997) (internal quotation marks omitted). We held in *United States v. Inclema*, 363 F.3d 1177, 1182 (11th Cir. 2004), that the rule of lenity applies to the mandatory Sentencing

Guidelines, and since then some members of our Court have expressed doubt as to whether that rule applies to the advisory Guidelines. *See United States v. Wright*, 607 F.3d 708, 719 (11th Cir. 2010) (William Pryor, J., joined by Fay, J., concurring). The key distinction recognized by Judges Pryor and Fay in their *Wright* concurrence was that the mandatory Guidelines, unlike the advisory Guidelines, statutorily required district courts to impose a sentence within the applicable Guidelines range. *See id.*

3.    The *Griffin* panel believed that the mandatory Guidelines "cannot be unconstitutionally vague because they do not establish the illegality of any conduct and are designed to assist and limit the discretion of the sentencing judge." *Griffin*, 2016 WL 3002293, at *4 (citing *Matchett*, 802 F.3d at 1195). It is true that the mandatory Guidelines did not criminalize conduct, but that is of no moment.

The *Griffin* panel's rationale is completely at odds with Supreme Court precedent, which has long held that vagueness "principles apply not only to statutes defining elements of crimes, but also to statutes fixing sentences." *Johnson*, 135 S. Ct. at 2557 (citing *United States v. Batchelder*, 442 U.S. 114, 123 (1979)). The ACCA itself, which sets a 15-year mandatory minimum prison term for certain defendants, does not establish the illegality of any conduct, but instead fixes certain sentences. Yet the Supreme Court held that the ACCA's residual clause was void for vagueness. *See Johnson*, 135 S. Ct. at 2557. And, as

discussed above, the mandatory Guidelines operated to fix sentences in almost precisely the same way as statutes setting minimum mandatory sentences. *See Booker*, 543 U.S. at 233 (explaining that before 2005 the Guidelines were "mandatory and impose[d] binding requirements on all sentencing judges").

The text of the ACCA's residual clause is identical in all respects to the residual clause of the career offender guideline. Not surprisingly, we have interpreted the two clauses using "[p]recisely the same analytical framework." *United States v. Oliver*, 20 F.3d 415, 418 (11th Cir. 1994). *See also Turner v. Warden Coleman FCI*, 709 F.3d 1328, 1335 n.4 (11th Cir. 2012) ("The definition of 'violent felony' under the ACCA is virtually identical to the definition of 'crime of violence' for purposes of the career offender enhancement of § 4B1.1 of the United States Sentencing Guidelines (USSG), so that decisions about one apply to the other.") (internal citation omitted). And in order to illustrate the "trouble" circuit courts had "making sense of the residual clause" of the ACCA, the Supreme Court in *Johnson*—in addition to citing decisions construing the ACCA's residual clause—pointed to cases that inconsistently construed the residual clause of the career offender guideline. *See Johnson*, 135 S. Ct. at 2560 (citing *United States v. Williams*, 559 F.3d 1143 (10th Cir. 2009) (a case construing the residual clause of the career offender guideline), and *United States v. Carthorne*, 726 F.3d 503 (4th Cir. 2013) (same)). *Booker* tells us the undeniable—that the residual clause of the

11

mandatory career offender guideline had the same effect as the ACCA's identical residual clause. It necessarily follows, then, that *Johnson* applies with equal force to the residual clause of the mandatory career offender guideline.

4.    The *Griffin* panel, citing *Matchett*, held that because a defendant has no constitutional right to be sentenced under the Guidelines, the mandatory Guidelines cannot be void for vagueness. *See Griffin*, 2016 WL 3002293, at *4. This reliance on *Matchett* was again misplaced.

*Matchett* had cited an Eighth Circuit decision, *United States v. Wivell*, 893 F.2d 156 (8th Cir. 1990), for a similar proposition. *See Matchett*, 802 F.3d at 1195. But the Eighth Circuit itself has since said that "[t]he reasoning in *Wivell* that the guidelines cannot be unconstitutionally vague because they do not proscribe conduct is doubtful after *Johnson*." *United States v. Taylor*, 803 F.3d 931, 933 (8th Cir. 2015). If the Eighth Circuit has doubts about the continuing validity of one of its own decisions, so should we.

In any event, the Supreme Court rejected the syllogism relied upon by *Griffin* six decades ago. Even if there exists no independent constitutional right to be sentenced under the Guidelines, once the Guidelines were promulgated and made mandatory by Congress, then a defendant's due process rights attached. *See Griffin v. Illinois*, 351 U.S. 12, 18 (1956) ("It is true that a State is not required by the Federal Constitution to provide . . . a right to appellate review at all. . . [But

once it does,] at all stages of the proceedings the Due Process and Equal Protection Clauses protect persons like petitioners from invidious discriminations."). *Griffin*, unfortunately, did not recognize this constitutional reality.

5.    The *Griffin* panel, without a single case citation or other authority in support, ruled alternatively that even if *Johnson* applied to the residual clause of the mandatory career offender guideline, "that does not mean that the ruling in *Welch* makes *Johnson* retroactive for purposes of a second or successive § 2255 motion premised on the applicability of *Johnson* to a guidelines challenge[.]" *Griffin*, 2016 WL 3002293, at \*5.  The premise which *Griffin* assumed—that a substantive rule of constitutional law expressly made retroactive by the Supreme Court can later be made only partially retroactive by a circuit court—is wrong.  For purposes of collateral review in criminal cases, constitutional retroactivity is an all-or-nothing proposition.  *See Teague v. Lane*, 489 U.S. 288, 316 (1989) (plurality opinion) ("We therefore hold that, implicit in the retroactivity approach we adopt today, is the principle that habeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure unless those rules would be applied retroactively to *all* defendants on collateral review through one of the two exceptions we have articulated."); *Butler v. McKellar*, 494 U.S. 407, 412–13 (1990) (applying *Teague* framework).

A new substantive rule of constitutional law is either retroactive on collateral

review or it is not.   Indeed, Justice Harlan, whose views on retroactivity the Supreme Court adopted in *Teague* and its progeny, criticized the notion that courts could make constitutional rules partially retroactive or partially prospective on a case by case basis.   *See Mackey v. United States*, 401 U.S. 667, 677 (1971) (Harlan, J., concurring in judgments in part and dissenting in part) ("What emerges from today's decisions is that in the realm of constitutional adjudication in the criminal field the Court is free to act, in effect, like a legislature, making its new constitutional rules wholly or partially retroactive or only prospective as it deems wise.   I completely disagree with this point of view.").   And that criticism was one of the reasons that led to the *Teague* retroactivity framework.   *See Teague*, 489 U.S. at 310.

6.      The *Griffin* panel also concluded that *Johnson* cannot be retroactive as applied to the mandatory Guidelines because its vagueness rule is procedural rather than substantive as applied to the mandatory Guidelines.   That too is mistaken.

First, even if we put *Booker* aside, there is no logical basis for treating the residual clause of the mandatory career offender guideline differently from the residual clause of the ACCA.   *Griffin* sought to distinguish the mandatory Guidelines from the ACCA by asserting that *Johnson* "would not alter the statutory boundaries for sentencing set by Congress for the crime," and by emphasizing that the Guidelines merely "produce changes in how the sentencing procedural process

14

is to be conducted." *Griffin*, 2016 WL 3002293, at \*5. But the mandatory Guidelines definitively did alter the substantive boundaries for sentencing, requiring in effect statutory minimum and maximum penalties for most cases. *See Wright*, 607 F.3d at 718–19 (William Pryor, J., joined by Fay, J., concurring) ("Because Congress required sentencing courts to apply the Sentencing Guidelines and impose a sentence within the applicable guidelines range, it was reasonable to view the Guidelines as effectively setting minimum and maximum penalties that varied based on the circumstances of the offense and the characteristics of the offender."). *Griffin* erred in concluding that the mandatory guidelines were procedural and not substantive, for retroactivity purposes.

Second, in *Montgomery v. Louisiana*, 136 S. Ct. 718, 733–34 (2016)— which held that *Miller v. Alabama*, 132 S. Ct. 2455 (2012) established a new substantive constitutional rule that was retroactive on collateral review—the Supreme Court acknowledged that under *Miller* some juvenile offenders convicted of murder could still receive a sentence of life without parole upon resentencing. This fact did not, however, make the *Miller* rule procedural or otherwise take it outside the realm of retroactively-applicable substantive rules: "Louisiana contends that because *Miller* requires [a] process, it must have set forth a procedural rule. This argument, however, conflates a procedural requirement necessary to implement a substantive guarantee with a rule that 'regulates only the *manner of*

15

*determining* the defendant's culpability.'" *Montgomery*, 136 S. Ct. at 734–35 (quoting *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004)).   Put differently, contrary to the *Griffin* panel's conclusion, the fact that the residual clause of the mandatory career offender guideline may in some ways implicate the process by which a district court imposes a sentence does not negate the fact that it *also* "fixes sentences," just as the residual clause of the ACCA does.   Vagueness principles therefore apply to both. *See Johnson*, 135 S. Ct. at 2557.

7.    In closing, we note that several of our sister circuits have concluded that *Johnson* applies to the residual clause of the career offender guideline. *See United States v. Madrid*, 805 F.3d 1204, 1211 (10th Cir. 2015); *United States v. Pawlak*, __ F.3d __, 2016 WL 2802723, at *3–4 (6th Cir. May 13, 2016); *United States v. Townsend*, No. 14-3652, 2015 WL 9311394, at *4 (3rd Cir. Dec. 23, 2015); *United States v. Welch*, No. 12-4402-CR L, 2016 WL 536656, at *4 (2d Cir. Feb. 11, 2016).   Other circuits have either questioned whether the residual clause of the career offender guideline remains constitutional after *Johnson* or have acted on the assumption or concession that *Johnson* applies. *See Ramirez v. United States*, 799 F.3d 845, 856 (7th Cir. 2015) (acting on the assumption that the Supreme Court's reasoning in *Johnson* applies to the residual clause of the career offender guideline); *United States v. Soto-Rivera*, 811 F.3d 53, 59 (1st Cir. 2016) (conducting a career offender analysis without relying on the residual clause

16

because the government had conceded that *Johnson* applied to the Guidelines).

The Fifth and Eighth Circuits have recently denied applications for leave to file second or successive motions to vacate in cases where the claim was that *Johnson* affected the residual clause of the advisory career offender guideline. *See In re Arnick*, __ F.3d __, 2016 WL 3383487, at *1 (5th Cir. June 17, 2016); *Donnell v. United States*, __ F.3d __, 2016 WL 3383831, at *3 (8th Cir. June 20, 2016). But as far as we can tell no other circuit has held that the residual clause of the mandatory career offender guideline is categorically immune from a *Johnson* challenge.

With these thoughts, we concur in the denial of Mr. Sapp's application.