[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-11972

_____

D.C. Docket No. 1:12-cr-00006-WLS-TQL-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ROBERT B. SPERRAZZA,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(August 17, 2015)

Before MARCUS, ROSENBAUM, and GINSBURG,[*] Circuit Judges.

GINSBURG, Circuit Judge:

      Dr. Robert Sperrazza was convicted of three counts of tax evasion, in

violation of 26 U.S.C. § 7201 and two counts of structuring a currency transaction,

_____

[*] Honorable Douglas H. Ginsburg, United States Circuit Judge for the District of Columbia,
sitting by designation.

in violation of 31 U.S.C. § 5324(a)(3).  The district court sentenced him to 36 months imprisonment and ordered him to forfeit $870,238.99.  Sperrazza argues the conviction must be set aside because the structuring counts of the indictment are defective and, if the conviction is not set aside, the order of forfeiture must be vacated because it violates the Excessive Fines Clause of the Eighth Amendment to the Constitution of the United States.  We disagree with both arguments and affirm the conviction and the order of forfeiture.

## I.  Background

Pursuant to 31 U.S.C. § 5313(a), a "domestic financial institution" is required to file a report with the Secretary of the Treasury whenever it "is involved in a transaction for the payment, receipt, or transfer of United States coins or currency … in an amount" greater than $10,000.  *See* 31 C.F.R. § 1010.311.  The "currency transaction reports" generated by financial institutions are used by law enforcement to detect criminal activity.  *See United States v. Lang*, 732 F.3d 1246, 1247 (11th Cir. 2013).  Because, however, the reporting obligation is borne by the financial institution and not by its customer "the reporting requirement could be evaded through the simple expedient of dividing large cash transactions into amounts small enough not to trigger it."  *Id.*  "To prevent that and similar end runs," *id.*, the law prohibits a person from "structuring" a transaction with a

2

financial institution "for the purpose of evading the reporting requirements," 31 U.S.C. § 5324(a).

Sperrazza and two other doctors had an anesthesiology practice in Albany, Georgia. The practice outsourced its billing operations to Physicians Professional Management (PPM), which collects and processes payments from patients and insurance companies. PPM ordinarily deposits the checks it receives from patients, but Sperrazza instructed PPM to mail to him each week any checks received from his patients. The bundle of checks Sperrazza received each week from PPM usually totaled several thousand dollars and on at least one occasion the checks totaled more than $10,000.

Approximately every ten days Sperrazza cashed the checks he received from PPM at a bank in Albany. Although Sperrazza and his practice had several accounts with the bank, he always cashed the checks rather than depositing them into an account. Ordinarily he cashed between 20 and 50 checks per visit; the checks often totaled more than $9,000 but never exceeded $10,000. In 2008, for example, Sperrazza cashed checks on 36 days, on 24 of which the checks totaled between $9,000 and $10,000. According to one of his partners, Sperrazza had told him he never cashed checks totaling more than $10,000 at one time because he wanted "to avoid any reports or anything that would involve … the regulatory or IRS authorities."

3

Sometimes Sperrazza also deposited cash into one of his accounts at the bank before he cashed the checks he had received from PPM. The cash deposits, like the checks, often totaled more than $9,000 without ever exceeding $10,000. In 2008, Sperrazza deposited cash on 18 days, on 14 of which he deposited between $9,000 and $10,000.

In December 2008 law enforcement officials searched Sperrazza's home in connection with an unrelated criminal investigation. The officers discovered there approximately $24,000 in cash, some of which was in an envelope labeled "clean." Sperrazza's accountant subsequently informed the IRS that Sperrazza had underreported his income by failing to disclose payments he had received from his patients. Sperrazza later filed amended tax returns and paid the tax owed for 2005, 2006, and 2007.

In 2012 a grand jury returned a five-count indictment against Sperrazza. The first three counts allege he evaded income tax in 2005, 2006, and 2007, respectively; the fourth and fifth counts allege he structured a currency transaction in 2007 and in 2008, respectively, in amounts totaling $870,238.99. The Government also notified Sperrazza it would seek an order requiring him to forfeit that amount.

In 2013 a jury found Sperrazza guilty of all five counts. In 2014 Sperrazza filed a motion to set aside the jury's verdict, in which he argued for the first time

4

the indictment is defective.  The district court denied the motion as untimely.  It then sentenced Sperrazza to concurrent terms of 36 months imprisonment for each count and ordered him to forfeit the $870,238.99 sought by the Government.

## II.  Analysis

On appeal Sperrazza renews his arguments that the indictment is defective and the order of forfeiture is excessive.

### A.    Indictment

Sperrazza first contends we must set aside his conviction because counts four and five of the indictment, which charge him with structuring a currency transaction in 2007 and in 2008 respectively, fail to state an offense and are factually inaccurate.  Before turning to the merits of Sperrazza's two claims, we must decide whether they are subject to appellate review and, if so, under what standard of review.

#### 1.    Standard of review

Sperrazza first asserted the indictment is defective in a motion he filed ten months after his trial and conviction.  The scope of our review is governed by Federal Rule of Criminal Procedure 12, which identifies the motions a defendant must file before trial and the consequences of filing an untimely motion.  A revised version of Rule 12 took effect after Sperrazza filed his appeal but before we heard argument.

5

The old version of Rule 12(b), which was in effect prior to December 1, 2014, distinguished two types of claims that an indictment is defective.[1]  The first type — claims the indictment "fails to invoke the court's jurisdiction or to state an offense" — could be raised at "any time while the case is pending."  *Id.* 12(b)(3)(B).  In a case to which the old rule applies, therefore, we are obligated to consider an argument the indictment fails to state an offense even if the defendant raises the argument for the first time on direct appeal.  *See United States v. Izurieta*, 710 F.3d 1176, 1179 (11th Cir. 2013) (holding the old version Rule 12(b)(3)(B) requires us to "raise sua sponte the jurisdictional issue of whether the indictment sufficiently alleges an offense in violation of the laws of the United States provided the mandate has not issued on direct appeal").

---

[1] *See* FED. R. CRIM. P. 12(b), (e)(2013):

**(b) Pretrial Motions.**

…

**(3) Motions That Must Be Made Before Trial.**  The following must be raised before trial:

…

**(B)** a motion alleging a defect in the indictment or information — but at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense.

…

**(e) Waiver of a Defense, Objection, or Request.**  A party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets….  For good cause, the court may grant relief from the waiver.

The second type of claim created by the old version of Rule 12 is that the indictment is defective for any reason other than those of the first type.  Type two claims had to be raised by the pre-trial deadline set by the district court and, pursuant to Rule 12(e), a defendant "waives" any type two claim not raised by that deadline.  *See United States v. Pacchioli*, 718 F.3d 1294, 1307 (11th Cir. 2013) ("[A] defendant must object before trial to defects in the indictment, such as a lack of factual specificity, and the failure to do so waives appellate review").  An argument that has been waived may not be reviewed on appeal.  *See United States v. Lewis*, 492 F.3d 1219, 1222 (11th Cir. 2007) (en banc).  If the old version of Rule 12 applies to this case, then under Rule 12(e) we are barred from reviewing Sperrazza's claim the indictment is factually inaccurate unless there is "good cause … [to] grant relief from the waiver."

Under the new version of Rule 12(b)(3), which took effect December 1, 2014, all claims that an indictment is defective "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits."[2]  The Advisory Committee Notes

---

[2] *See* FED. R. CRIM. P. 12(b)(3), (c)(2015):

**(b) Pretrial Motions.**

> …

accompanying the new rule explains it was "amended to remove language that allowed the court at any time while the case is pending to hear a claim that the 'indictment or information fails … to state an offense,'" which "was previously considered fatal whenever raised and was excluded from the general requirement that charging deficiencies be raised prior to trial."

If applicable to Sperrazza's appeal, the new rule renders untimely his motion arguing the indictment fails to state an offense — unless, that is, the "basis for the

---

**(3) Motions That Must Be Made Before Trial.** The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits:

> …
>
> **(B)** a defect in the indictment or information, including:
>
> > **(i)** joining two or more offenses in the same count (duplicity);
> >
> > **(ii)** charging the same offense in more than one count (multiplicity);
> >
> > **(iii)** lack of specificity;
> >
> > **(iv)** improper joinder; and
> >
> > **(v)** failure to state an offense.
>
> …

**(c) Deadline for a Pretrial Motion; Consequences of Not Making a Timely Motion.**

> …
>
> **(3) Consequences of Not Making a Timely Motion Under Rule 12(b)(3).** If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause.

motion" was not "reasonably available" before trial or it could not have been "determined without a trial on the merits." Rule 12(b)(3)(2015). If the motion was untimely, then the argument is forfeit, and we must review its denial by the district court only for plain error, not *de novo*. *See* FED. R. CRIM. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731 (1993) (holding the plain-error standard applies to "errors that were forfeited because not timely raised in district court").

Although the amendment to Rule 12 is detrimental to Sperrazza's cause in one respect, it works to his advantage in another. Under the old version of the rule, Sperrazza waived his claim the indictment is factually inaccurate because he did not raise it before trial, and the argument is not subject to appellate review unless Sperrazza shows there is "good cause" for relief from the waiver. Rule 12(e)(2013); *see Pacchioli*, 718 F.3d at 1307. The new version of Rule 12, however, makes no mention of "waiver." The committee's notes explain the word was omitted "to avoid possible confusion" because "Rule 12(e) has never required any determination that a party who failed to make a timely motion intended to relinquish a defense, objection, or request that was not raised in a timely fashion." Sperrazza's claim the indictment is factually inaccurate is therefore subject to review for plain error under the new rule even if he does not show "good cause" for failing to present the claim before trial.

9

The chart below illustrates some of the differences between the old and new versions of Rule 12:

| | | Type of claim not timely raised before trial | | |
|---|---|---|---|---|
| | | Court lacks jurisdiction | Indictment fails to state an offense | Indictment is defective for any other reason, *e.g.*, factual inaccuracy |
| **Version of Rule 12** | Before Dec. 1, 2014 | Review *de novo* at any time until mandate issues on direct review | | Not subject to appellate review except "for good cause" shown |
| | As of Dec. 1, 2014 | Review *de novo* at any time until mandate issues on direct review | Review only for plain error unless the "basis for the motion" was not "reasonably available" before trial or it could not have been "determined without a trial on the merits" | |

Having outlined the difference between the two versions of Rule 12, we consider which version applies to this appeal.

The order of the Supreme Court amending Rule 12 provides the amendment "shall take effect on December 1, 2014, and shall govern in all proceedings in criminal cases thereafter commenced and, insofar as just and practicable, all

proceedings then pending." Proposed Amendments to the Federal Rules of Criminal Procedure, 572 U.S. ___ (Apr. 28, 2014); *see also* 28 U.S.C. § 2074(a) (describing the process by which the Supreme Court transmits to the Congress amendments to the federal rules of procedure). This same provision "has been submitted by the Supreme Court [to the Congress] with nearly all amendments to the Federal Rules of Criminal Procedure." *United States v. Woods*, 399 F.3d 1144, 1147 (9th Cir. 2005). In its original brief, the Government relied upon the old version of Rule 12 for its waiver argument but neither party discussed which version of the rule applies to this case. Because the jurisdiction of the court was implicated, we ordered the parties to submit supplemental briefs addressing whether this appeal is a "proceeding" that was pending on December 1, 2014 and, if so, whether it would be "just and practicable" to apply the new rule. Although we have previously applied the old version of Rule 12 to two appeals decided after December 1, 2014, in neither case did we consider whether we were required to apply the new version of the rule. *See United States v. Bailey*, 778 F.3d 1198, 1201 n.1 (11th Cir. 2015); *United States v. Moran*, 778 F.3d 942, 963–64 (11th Cir. 2015). In any event, whether it is "just and practicable" to apply the new version of a rule "is necessarily a case-by-case consideration." *United States v. Duke*, 50 F.3d 571, 575 (8th Cir. 1995).

11

In their supplemental briefs, the parties agree this appeal is a "proceeding" that was pending on December 1, 2014 within the meaning of the Supreme Court's order. A "proceeding" may be defined as "'any procedural means for seeking redress from a tribunal or agency.'" *United States v. Moreno*, 364 F.3d 1232, 1235 (11th Cir. 2004) (quoting Black's Law Dictionary 1221 (7th ed. 1999)). Indeed we have used this definition in interpreting an identical order of the Supreme Court amending the Federal Rules of Criminal Procedure. *See id.* Because a direct appeal is a "proceeding," the new version of Rule 12 governs an appeal filed before December 1, 2014 but decided after that date "insofar as just and practicable." *See United States v. Anderson*, 783 F.3d 727, 740–41 (8th Cir. 2015) (applying the new version of Rule 12 to an appeal filed before December 1, 2014 but decided after that date); *United States v. Soto*, 780 F.3d 689, 700–01 (6th Cir. 2015) (same); *but see United States v. Smith*, 600 F. App'x 991, 994 n.3 (6th Cir. 2015) (applying the old version of Rule 12 to an appeal decided after December 1, 2014 because "the district court's final judgment was entered … well before the effective date of the Rule 12 amendments").

The parties disagree about whether it would be "just and practicable" to apply the new version of Rule 12 to this case. Sperrazza argues it would be unjust because it would render untimely his argument the indictment fails to state an offense even though the old version of the rule was in effect when he first raised

the argument in his motion for a new trial and, under that version, the argument was timely. *See Izurieta*, 710 F.3d at 1179. Under the new version of the rule, Sperrazza's argument would have been timely only if he had raised it before trial, which was well before the new rule had even been proposed.

We agree with Sperrazza that it would not be "just" to change the legal consequence of his failure to raise an argument in June 2013 based upon an amendment that was proposed in April 2014 and took effect in December 2014. *See United States v. Bowler*, 252 F.3d 741, 746 (5th Cir. 2001) (holding it would not be "just and practicable" to apply the new version of a Federal Rule of Criminal Procedure because the defendant's motion would be considered timely under the old rule but untimely under the new rule). We will therefore apply the old version of Rule 12 to Sperrazza's claim the indictment fails to state an offense and hence we review that claim *de novo*.

We will, however, apply the new version of the rule to Sperrazza's claim the indictment is factually inaccurate because it would not be unjust or impractical to do so, and neither party argues it would be. Sperrazza's argument the indictment is factually inaccurate was untimely under both versions of the rule, but under the new version it is forfeit rather than waived. We will therefore review for plain error Sperrazza's claim the indictment is factually inaccurate.

2.    Defects in the indictment

a.    Failure to state an offense

Sperrazza argues the indictment fails to charge him with structuring a currency transaction in violation of 31 U.S.C. § 5324(a) because it does not allege he had a "cash hoard" in excess of $10,000 that he divided into two or more amounts of less than $10,000.  To be sure, some prosecutions for structuring involve allegations the defendant structured a single cash hoard.  *See, e.g.*, *Lang*, 732 F.3d at 1248 (explaining a defendant may be convicted of structuring if, for example, he receives $24,000 and deposits the money into his bank account in amounts of $9,000, $9,000, and $6,000 on three different days for the purpose of evading the reporting requirement).

The Government argues that dividing a sum the defendant has in hand is not the only way to violate the statute.  It relies upon a regulation promulgated by the Department of the Treasury, which provides that structuring "includes, but is not limited to, the breaking down of a single sum of currency exceeding $10,000 into smaller sums."  31 C.F.R. § 1010.100(xx).  Structuring may also involve "a transaction, or series of currency transactions at or below $10,000."  *Id.*; *see United States v. Sweeney*, 611 F.3d 459, 470 (8th Cir. 2010) (holding "the Treasury

14

regulations accurately describe the offense of structuring a transaction"); *United States v. Van Allen*, 524 F.3d 814, 821 (7th Cir. 2008) (defining "structuring" as "altering the form of a transaction in order to avoid activating the bank's duty to file a currency transaction report" and noting this definition "meshes well with [the definition] in the Treasury regulation" (quotation marks omitted)).

Sperrazza contends our decision in *Lang* requires the Government to allege in the indictment he had cash on hand in excess of $10,000. In *Lang* the Government asserted the defendant engaged in a series of 85 cash transactions, each of less than $10,000, for the purpose of evading the reporting requirement; the indictment charged the defendant with 85 counts of structuring. 732 F.3d at 1250–52. We held the indictment was "so defective that it does not … charge an offense" because "[a] cash transaction involving a single check in an amount below the reporting threshold cannot in itself amount to structuring." *Id.* at 1249–50 (quotation marks omitted). In other words, each count of structuring must include two or more transactions. *Id.* at 1249 ("When cashed checks come to the structuring dance, it takes at least two to tango"). In this case, the Government did not charge Sperrazza with a separate count of structuring in connection with every transaction he conducted. In keeping with *Lang*, the Government grouped into a single count a series of transactions, all of which were allegedly part of a single

15

offense of structuring.  As we said in that case, the "structuring itself, and not the individual deposit, is the unit of the crime."  *Id.* at 1248 (quotation marks omitted).

We have never held all the transactions that make up a single count of structuring must have originated from a single cash hoard, and Sperrazza has not pointed to any case endorsing that rule.  To the contrary, two circuits have expressly rejected the contention.  *See Sweeney*, 611 F.3d at 471 ("While breaking up a single cash transaction that exceeds the $10,000 reporting threshold into two or more separate transactions is one way of committing the offense of structuring a transaction, it is not the only way"); *Van Allen*, 524 F.3d at 820 (rejecting the argument "that the only method of proving structuring is to demonstrate that a defendant held a unitary cash hoard over $10,000 and then broke it up to deposit in amounts under $10,000").

Sperrazza also relies upon a single sentence in *Ratzlaf v. United States*, 510 U.S. 135 (1994), which held a prior version of § 5324 required the Government to prove the defendant knew his conduct was unlawful in order to convict him of structuring.  *Id.* at 137.[3]  Before so holding, the Court observed: "It is illegal to 'structure' transactions — *i.e.*, to break up a single transaction above the reporting threshold into two or more separate transactions — for the purpose of evading a

---

[3] The Congress amended § 5324 after the Supreme Court issued its opinion in *Ratzlaf*.  *See* Pub. L. No. 103-325, § 411, 108 Stat. 2160, 2253 (1994).  As we have since explained, "the only mental state required under the new enforcement provision is a purpose to evade the reporting requirement."  *United States v. Brown*, 117 F.3d 471, 473 n.1 (11th Cir. 1997).

financial institution's reporting requirement."  *Id.* at 136.  We do not read this introductory sentence as holding there is only one way to structure a transaction. Although breaking up a sum larger than $10,000 was the form of structuring at issue in *Ratzlaf*, nothing in the Court's opinion indicates it intended to provide an exclusive definition of the term.  *See Sweeney*, 611 F.3d at 471 (referring to the definition of "structuring" in *Ratzlaf* as a "dictum").  In *Lang* we implicitly read the definition offered in *Ratzlaf* as exemplary, not exclusive.  *See* 732 F.3d at 1248 ("[T]he Supreme Court has explained that the crime of structuring includes 'break[ing] up a single transaction above the reporting threshold into two or more separate transactions'" (quoting *Ratzlaf*, 510 U.S. at 136)).

Our recent decision in *United States v. Aunspaugh*, 2015 WL 4098254 (11th Cir. July 8, 2015), is inapposite for the same reason.  In that case, the defendants argued there was insufficient evidence to prove they had structured a series of transactions of less than $10,000 because they had also engaged in several transactions above the $10,000 reporting threshold.  We rejected this contention because "a person who once engages in a transaction of more than $10,000 does not get a pass to structure later transactions with impunity."  *Id.* at *8.  In the course of rejecting the defendants' argument, we observed: "To constitute structuring, a transaction of more than $10,000 must be broken into smaller increments, each of which typically is for less than $10,000, thus avoiding the

17

reporting requirement." *Id.* Unlike in this case, however, we were not called upon to determine whether that is the only way to structure a transaction in violation of § 5324(a). Our generic description of the offense was not tied to the facts of the case or necessary to our decision that a defendant may be convicted of structuring a series of transactions of less than $10,000 even though he also engaged in transactions of more than $10,000. *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 762 (11th Cir. 2010) ("Statements in an opinion … that are not fitted to the facts … or that are not necessary to the decision of an appeal given the facts and circumstances of the case … are dicta" (internal quotation marks and citations omitted)). If anything, our decision in *Aunspaugh* is of a piece with our disposition of this case. In *Aunspaugh* the Government alleged the defendants received small sums of money on an ongoing basis from a fraudulent scheme and engaged in 15 separate transactions of slightly less than $10,000 each for the purpose of evading the reporting requirement. *See* 2015 WL 4098254, at *2, *7. The Government charged the defendants with a single count of structuring that encompassed all 15 transactions of less than $10,000. *Id.* at *7. That is the same approach the Government took in this case, and that we now hold is consistent with § 5324(a).

To be clear, each count of structuring must include two or more transactions that together exceed $10,000. *See Lang*, 732 F.3d at 1249 ("A cash transaction involving a single check in an amount below the reporting threshold cannot in

18

itself amount to structuring because the crime requires a purpose to evade the reporting requirement, and that requirement does not apply to a single cash transaction below the threshold"). We agree with Judge Rosenbaum that a person who divides $2,000 into four transactions of $500 each may not be charged with violating § 5324(a) because a transaction of $2,000 would not trigger the reporting requirement. *See* S. Rep. No. 99-433, at 22 (1986); Dissent at 4–5. We disagree only with Judge Rosenbaum's assertion that the statute requires the Government to prove the defendant had possession or at least "control" of more than $10,000 when he completed each individual transaction. *See* Dissent at 5–6. Two examples illustrate the distinction. First, consider a defendant who has checks totaling $18,000 but decides to cash $9,000 today and $9,000 tomorrow in order to avoid the reporting requirement; there can be no question the defendant may be charged with one count of structuring in violation of § 5324(a)(3). Second, consider the defendant who has checks totaling $9,000 and knows he will receive another bundle of checks totaling more than $1,000 tomorrow; in order to avoid the reporting requirement, he decides to cash the checks totaling $9,000 today. We think the Government may charge the defendant in the second example with one count of structuring even though he did not have more than $10,000 in hand at any one time. As the Government aptly explains, the statute requires it "to prove only that [the defendant] cashed checks and/or made deposits of $10,000 or less for the

19

purpose of evading the federal reporting requirements," and not that "his deposits were artificially constructed pieces of a specific pool of cash equaling more than $10,000."

Sperrazza argues an indictment that merely lists a series of transactions of less than $10,000 expands the scope of liability under § 5324(a) to the point that it "criminalize[s] going to the bank too often." Of course many a small business may make daily or weekly cash deposits in amounts less than $10,000; they are not liable to prosecution for structuring, however, because one violates § 5324(a)(3) only if one structures a transaction for the purpose of evading the reporting requirement. The key allegation in the indictment is not that Sperrazza engaged in a series of transactions under $10,000, but that he did so "for the purpose of evading the reporting requirements." Sperrazza does not challenge the sufficiency of the evidence showing he had the requisite *mens rea*, which includes his partner's testimony that Sperrazza told him he never cashed checks totaling more than $10,000 because he wanted "to avoid any reports or anything that would involve … the regulatory or IRS authorities."[4]

---

[4] Because Judge Rosenbaum similarly argues our interpretation of § 5324(a) might allow the Government to prosecute innocent conduct, *see* Dissent at 1, 15–16, we think it worth reiterating that a bank's reporting obligation applies only to a transaction in currency of more than $10,000. A person cannot be prosecuted for structuring routine transactions, such as depositing his paycheck, because the reporting requirement does not apply to the deposit of a check. *See* 31 U.S.C. § 5313(a); 31 C.F.R. § 1010.311 (requiring a financial institution to file a report of each "transaction in currency of more than $10,000"); § 1010.100(m) (defining "currency" as "the coin and paper money of the United States or of any other country"). Nor can a person be

In sum, we hold the Government may properly charge a defendant with structuring a transaction in violation of § 5324(a)(3) by alleging he engaged in a series of currency transactions under $10,000 for the purpose of evading the reporting requirement.  The statute does not require the Government to show the defendant had in hand at one time $10,000 or more of the funds he allegedly structured.  The allegations in the indictment of Sperrazza are sufficient, therefore, to charge him with structuring a transaction in violation of § 5324(a)(3).[5]

      b.     Multiplicity

The Government concedes counts four and five of the indictment, which charge Sperrazza with structuring in 2007 and 2008 respectively, are multiplicitous, meaning they "charge[] a single offense in more than one count." *United States v. Woods*, 684 F.3d 1045, 1060 (11th Cir. 2012) (quotation marks omitted).  The Government admits having erred by dividing the transactions based upon the year in which they occurred because "no provision of the statute indicates that a single course of structuring can be segmented based on 12-month intervals

---

prosecuted solely because he prefers to deal in cash, as the statute requires the Government to prove he structured a transaction "for the purpose of evading the reporting requirements."  31 U.S.C. § 5324(a).

[5] We express no view whether the Government may charge a defendant with more than one count of structuring under the circumstances presented by this appeal.  As Judge Rosenbaum suggests, the Government might have been able to identify several occasions where Sperrazza possessed checks totaling more than $10,000 that he cashed in two or more transactions of less than $10,000.  *See* Dissent at 18 n.7.  Because we affirm the conviction based upon the theory advanced by the Government, we need not decide whether it could have charged Sperrazza with multiple counts.

(or any other intervals of time)." *United States v. Handakas*, 286 F.3d 92, 98 (2d Cir. 2002). As it acknowledges, it "should have charged [Sperrazza] not with two counts of structuring for a one-year period each, but rather with one count of structuring approximately $800,000 over a two-year period." At the same time, the Government argues Sperrazza has forfeited any argument for relief on the basis of this error.

Indeed, Sperrazza has never argued the indictment is multiplicitous. He did not raise the point before the trial court or in his opening brief here, and his reply brief neither requests relief on this ground nor responds to the Government's assertion he failed to raise the argument. Perhaps Sperrazza's silence reflects his understanding that, as we have explained upon numerous occasions, "we do not consider arguments not raised in a party's initial brief." *Holland v. Gee*, 677 F.3d 1047, 1066 (11th Cir. 2012) (internal quotation marks omitted). To be sure, we interpreted the old version of Rule 12 as requiring the court "to raise *sua sponte* the issue of whether an indictment properly charges an offense," but we have declined to extend that obligation to a claim that "does not implicate jurisdictional issues and does not assert that the indictment fails to state an offense." *United States v. Seher*, 562 F.3d 1344, 1359-60 (11th Cir. 2009) (holding the court is not obligated to consider *sua sponte* whether an indictment is "duplicitous," *i.e.*, whether it "charges two or more separate and distinct offenses" in the same count). Because

22

we are not obligated to determine *sua sponte* whether counts four and five of the indictment are multiplicitous, we will apply "our well-established rule that issues and contentions not timely raised in the briefs are deemed abandoned." *United States v. Ardley*, 242 F.3d 989, 990 (11th Cir. 2001).[6]

  c.  Factually inaccurate

Sperrazza next argues the indictment is factually inaccurate. The indictment introduces the list of 108 transactions Sperrazza conducted in 2007 and 2008 by alleging he "negotiate[d] the checks set for[th] below in increments less than $10,000." The parties agree that statement is inaccurate because the evidence shows 32 of the 108 transactions involved deposits of cash, not checks. For example, the indictment asserts Sperrazza conducted two transactions on March 15, 2007, one in the amount of $9,000.00 and a second in the amount of $7,289.65. The indictment states both transactions involved the cashing of checks, but the evidence presented at trial shows Sperrazza deposited $9,000.00 of cash into his account and then cashed checks totaling $7,289.65.

Because we have concluded it is "just and practicable" to apply the new version of Rule 12 to this claim, we review it only for plain error. Under that standard, we may reverse the defendant's conviction only if we determine the

---

[6] We note that even if counts four and five are multiplicitous, "any possible error was obviously harmless because the arguably multiplicitous counts resulted in concurrent sentences." *Pacchioli*, 718 F.3d at 1308. Although we can merge multiplicitous counts into a single count, doing so here would affect neither the sentence nor the amount subject to the order of forfeiture. *See United States v. Langford,* 946 F.2d 798, 805 (11th Cir. 1991).

23

district court committed "(1) … an error (2) that is plain (3) that affects the defendant's substantial rights and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Madden*, 733 F.3d 1314, 1321 (11th Cir. 2013).

Although the Government concedes it erred in drafting the indictment, it argues the error is not plain and did not affect Sperrazza's substantial rights. We agree the factual inaccuracy in the indictment did not affect the defendant's substantial rights. Despite the error, the indictment notified Sperrazza of the precise transactions the Government alleged were structured. The cash deposits were erroneously referred to as checks, but they were not outside the scope of the offense charged because a defendant may be convicted of violating § 5324(a)(3) for structuring that involves either cashing checks or depositing cash. *See United States v. Vazquez*, 53 F.3d 1216, 1219 (11th Cir. 1995) (affirming a conviction for structuring cash deposits). Moreover, the Government's trial exhibits clearly showed which transactions were actually deposits of cash, and a Government witness accurately described the exhibits to the jury. Sperrazza himself also testified about some of the cash deposits, which indicates the factual inaccuracy in the indictment did not affect his ability to prepare a defense. *See United States v. Hill*, 643 F.3d 807, 860 (11th Cir. 2011) ("A variance between indictment and proof is fatal only when it affects the 'substantial rights' of the defendant by

24

insufficiently notifying him of the charges against him so that he may prepare a proper defense" (quotation marks omitted)); *see also United States v. Pena*, 684 F.3d 1137, 1147-48 (11th Cir. 2012) ("Practical, rather than technical, considerations govern the validity of an indictment.  Minor deficiencies that do not prejudice the defendant will not prompt this court to reverse a conviction." (quotation marks omitted)).

B.    Order of forfeiture

Sperrazza next argues the order compelling him to forfeit $870,238.99 violates the Excessive Fines Clause of the Eighth Amendment.  A "forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense."  *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). We determine whether a fine is "grossly disproportional" by considering "(1) whether the defendant falls into the class of persons at whom the criminal statute was principally directed; (2) other penalties authorized by the legislature (or the Sentencing Commission); and (3) the harm caused by the defendant."  *United States v. Browne*, 505 F.3d 1229, 1281 (11th Cir. 2007).

First, we agree with the Government that Sperrazza's conduct places him "at the dead center" of the class of persons at whom § 5324(a)(3) is directed.  Law enforcement officials use the currency transaction reports filed by financial institutions to track down criminal activity.  *See Lang*, 732 F.3d at 1247.  Here the

25

evidence shows Sperrazza structured transactions in order to disguise his tax evasion.  The course of his unlawful structuring persisted for two years and involved more than 100 transactions in amounts totaling more than $800,000.  *See United States v. Jalaram, Inc.*, 599 F.3d 347, 356 (4th Cir. 2010) (holding an order of forfeiture did not violate the Excessive Fines Clause because the defendant's conduct "spanned a long period of time, was connected to other crimes, and … [involved] substantial sums of money").

Second, we do not think the order of forfeiture is excessive in relation to the penalties authorized by the Congress and the Sentencing Commission.  We follow three rules of thumb when comparing the amount subject to forfeiture to the penalties authorized by statute and by the Sentencing Guidelines.  First, "if the value of the property forfeited is within or near the permissible range of fines under the sentencing guidelines, the forfeiture almost certainly is not excessive." *United States v. 817 N.E. 29th Dr., Wilton Manors, Fla.*, 175 F.3d 1304, 1310 (11th Cir. 1999).  Second, a forfeiture "above either the statutory maximum fine or the Guidelines range" is not "presumptively invalid," but will "receive closer scrutiny."  *United States v. Chaplin's, Inc.*, 646 F.3d 846, 852 (11th Cir. 2011). Third, a "forfeiture far in excess of the statutory fine range … is likely to violate the Excessive Fines Clause."  *817 N.E. 29th Dr.*, 175 F.3d at 1309 n.9.

26

Under the relevant statute and Sentencing Guideline, Sperrazza was subject to a fine of up to $500,000. *See* 31 U.S.C. § 5324(d)(2); U.S.S.G. § 5E1.2(c)(4).[7] The order directing him to forfeit $870,238.99 must receive "close[] scrutiny" because it exceeds the statutory maximum fine of $500,000, *Chaplin's*, 646 F.3d at 852, but it is not "far in excess" of that amount, *817 N.E. 29th Dr.*, 175 F.3d at 1309 n.9. We have upheld all forfeitures imposed by district courts in amounts up to twice the maximum authorized fine. *See, e.g.*, *Chaplin's*, 646 F.3d at 854 (holding a forfeiture of $1,877,262 is not excessive in relation to a maximum authorized fine of $1,500,000); *United States. v. One Parcel Prop. Located at 427 & 429 Hall St., Montgomery, Montgomery Cnty., Ala.*, 74 F.3d 1165, 1172 (11th Cir. 1996) (holding a forfeiture of $65,000 is not excessive in relation to a maximum authorized fine of $40,000); *see also United States v. Wallace*, 389 F.3d 483, 486 (5th Cir. 2004) (holding a forfeiture is not grossly disproportional because it exceeds the maximum authorized fine "by only a factor of two"). By contrast, in *Bajakajian* the Supreme Court held the forfeiture of $357,144 would be grossly disproportional to the gravity of the offense because the Sentencing

---

[7] Sperrazza was actually subject to a maximum fine of $1,000,000 because he was convicted of two counts of structuring, but the Government has conceded he should have been convicted of only one count. Therefore the Government has defended the forfeiture in relation to the maximum penalty Sperrazza could have received if he had been convicted of one count of structuring $870,238.99 over the course of two years.

Guidelines provided the defendant would be subject to a maximum fine of only $5,000. *See* 524 U.S. at 338.

Third, we reject Sperrazza's argument that the amount of the forfeiture is grossly disproportional to the harm caused by the structuring. Sperrazza argues he caused minimal harm because he lawfully earned the money he structured. As the Government explains, however, a person may be convicted of structuring in violation of § 5324(a) regardless whether he earned the money lawfully. *See United States v. MacPherson*, 424 F.3d 183, 193 (2d Cir. 2005) ("Section 5324 makes no reference to the source of the monies at issue or to the reason why a person seeks to avoid" the reporting requirement). To be sure, structuring might cause less harm when it does not disguise another crime. *See Bajakajian*, 524 U.S. at 338 (holding a forfeiture was grossly disproportional to the gravity of the offense in part because the defendant's violation of a reporting requirement "was unrelated to any other illegal activities" and the "money was the proceeds of legal activity and was to be used to repay a lawful debt"). That is not the case here, however, because the evidence shows Sperrazza structured transactions specifically in order to hide taxable income from the IRS. *See United States v. George*, 779 F.3d 113, 123–24 (2d Cir. 2015) (distinguishing the harm caused by the "deliberate and sustained thwarting" of multiple laws from the "one-time failure to report otherwise legal activity as in *Bajakajian*"). Sperrazza points out

28

he eventually paid the tax owed on the income, but that was after a search of his home had turned up a large sum of cash.  He also overlooks the harm caused by the structuring itself, which decreased the likelihood the IRS would detect the underlying tax evasion and increased the cost of investigating his crime.  *See United States v. Malewicka*, 664 F.3d 1099, 1107 (7th Cir. 2011) (explaining structuring "inhibit[s] the government's ability to effectively uncover and identify fraud").

Finally, Sperrazza asserts the "district court's order permits the government to count and thus to forfeit the same funds … twice" because the indictment "includes cash in and cash out."  As we have seen, the evidence shows Sperrazza structured some transactions by cashing checks and others by depositing cash into his account.  He seems to imply the district court double counted some of the money he structured, presumably because some or all of the cash he deposited might have originated as checks he had previously cashed.  As the Government points out, however, Sperrazza does not explain why this assertion is relevant to whether the order of forfeiture is grossly disproportionate.  Whether sufficient evidence supports the amount the defendant is said to have structured is a different question than whether the amount to be forfeit is so disproportionate as to violate the Eighth Amendment.  *Cf. United States v. Dowling*, 403 F.3d 1242, 1245 (11th

Cir. 2005) ("[A]n objection based solely upon sufficiency of the evidence does not preserve a constitutional error").

In any event, Sperrazza's passing reference to the possibility the district court double counted some of the money subject to forfeiture is not presented as a challenge to the sufficiency of the evidence. We will not, therefore, address whether sufficient evidence supports the district court's calculation of the amount subject to forfeiture. *See Brown v. United States*, 720 F.3d 1316, 1332 (11th Cir. 2013) ("[A] party seeking to raise a claim or issue on appeal must plainly and prominently so indicate. Merely making passing references to a claim under different topical headings is insufficient. Instead, the party must clearly and unambiguously demarcate the specific claim and devote a discrete section of his argument to it." (internal quotation marks and citation omitted)).

## III. Conclusion

Sperrazza is not entitled to relief on his claim the indictment is defective. The indictment properly charges him with structuring in violation of 31 U.S.C. § 5324(a)(3), and although there is a factual error in the indictment, he has not shown the error affected his substantial rights. Sperrazza's claim the order of forfeiture violates the Excessive Fines Clause of the Eighth Amendment also lacks merit. The judgment of the district court is, therefore,

*Affirmed.*

ROSENBAUM, Circuit Judge, concurring in part and dissenting in part.

During oral argument in this case, the Court, in effect, asked counsel for the government whether a salaried person who earned $9,000 a week and deposited it in cash weekly, intending at least in part to evade the reporting requirement, committed the crime of structuring under 31 U.S.C. § 5324(a)(3). The government suggested that such a person did. Today the Court embraces this construction of § 5324(a)(3) as the law.

Granted, most of us do not have the problem of trying to figure out what to do with our $9,000-per-week salary, but this same logic applies to any weekly salary payment under $10,000. And it does not end with weekly salary payments. As a result of today's ruling, in this Circuit, no matter how small a sum of money a person may possess or otherwise enjoy a right to control—even if only a few dollars—he may find himself facing structuring charges if he goes to the bank often enough to create the appearance to the government of engaging in a pattern of financial transactions of $10,000 or less. I suppose that we will discover in the coming years how frequent a bank visitor one must be to imperil himself, but, in any case, it is clear today that § 5324(a)(3) has taken on a far broader reach than Congress ever intended.

31

**I.**

*A.*    ***Congress Did Not Intend for the Anti-structuring Statute to Cover Transactions Where the Person Did Not Have Control of At Least $10,000***

Beginning, as we must, with the statutory language, *see CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001), § 5324 states, in relevant part, that "[n]o person shall, for the purpose of evading the reporting requirements . . . (3) structure . . . , or attempt to structure . . . any transaction with one or more domestic financial institutions."  31 U.S.C. § 5324(a)(3).  In the past, we have said that the language "'for the purpose of evading' the reporting requirements" means that "the structured transaction must involve an amount that is more than $10,000; otherwise, evasion would not be necessary or possible because there would be no reporting requirement anyway."[1]  *See United States v.*

_____

[1] While the Court describes *Lang* as holding only that "each count of structuring must include two or more transactions," Maj. Op. at 12, I respectfully disagree that *Lang* can be cabined in that way.  On the contrary, our characterization of the problems with the way structuring was charged and our direction on how it should have been charged in *Lang* fully supports the view that, for structuring to occur, a person must have legal access to at least $10,000.  We explained in *Lang*,

> The government's theory . . . is that Lang received from one source 21 payments exceeding $10,000 over a period of eight months, he had those larger payments broken into multiple checks each of which was less than $10,000, and he then cashed those checks separately in a way that evaded the reporting requirements.  That is all well and good, but it is not what is alleged in the indictment.  Instead of a ***series of counts each alleging a payment or payments totaling more than $10,000 that were structured into checks of smaller amounts***, which were then cashed, the indictment consists of 85 counts each of which separately alleges that a single check in an amount less than $10,000 was structured.

32

*Lang*, 732 F.3d 1246, 1248 (11th Cir. 2013) (discussing the same language in 31

C.F.R. § 1010.100(xx)); *see also United States v. Aunspaugh*,[2] __F.3d__, No. 12-

---

732 F.3d at 1249 (emphasis added).  As this excerpt shows, while we identified "[t]he structuring itself, and not the individual deposit" as the unit of prosecution, *id.* at 1248 (citation and internal quotation marks omitted), we further indicated that the "structuring itself," meaning the prosecutable unit, refers to the payment or group of payments "***totaling more than $10,000*** that were structured into checks of smaller amounts, which were ***then cashed*." *Id.* at 1249 (emphasis added).  In other words, we understood structuring to first require a hoard of more than $10,000, from which smaller transactions were "then" (*i.e.*, later) engaged in.  Our description of how the government should have charged the conduct also reveals that we thought that there should have been a "***series of counts***," meaning 21 counts based on the "21 payments exceeding $10,000 over a period of eight months," which were then "broken into multiple checks each of which was less than $10,000," and cashed; we did not suggest that the government should have charged a single count stemming eight months.

   [2] The Court suggests that "*Aunspaugh* is of a piece with our disposition of this case" because there we affirmed a structuring conviction where the government charged the defendants with a single count of structuring that encompassed 15 transactions, each of $10,000 or less, that occurred over a few months.  Maj. Op. at 14.  But nothing in that opinion indicated that at the times when each of the 15 transactions alleged in the indictment were conducted, the defendants did not control more than $10,000.  Indeed, *Aunspaugh* itself described the checks involved as being for "amounts just below the reporting requirement." 2015 WL 4098254, at *7.  Moreover, the Aunspaughs did not complain on appeal that they did not control at least $10,000 at the times that they were alleged in the indictment to have engaged in the structuring acts.  Instead, the Aunspaughs argued that "a person does not engage in structuring unless 'each' transaction the person participates in is for $10,000 or less." *Id.* at *8.  We rejected this contention, explaining,

> To constitute structuring, a transaction of more than $10,000 must
> be broken into smaller increments, each of which typically is for
> less than $10,000, thus avoiding the reporting requirement.  But a
> person who once engages in a transaction for more than $10,000
> does not get a pass to structure later transactions with impunity.

*Id.*  In other words, we confirmed in *Aunspaugh* our understanding expressed in *Lang*:  to structure, a person must control at least a reportable amount.  To the extent that the Court's opinion can be viewed as positing that the form of the indictment in *Aunspaugh* suggests that the defendants did not control more than $10,000 during some or all of the specific transactions alleged in the structuring count, it would have been quite strange for us to have defined structuring in *Aunspaugh* in a way that conflicted with the facts of that very case.  Instead, it is clear that the problem that today's Majority picks up on in *Aunspaugh* is one of form of the indictment; to the extent that any two or more of the transactions charged represented smaller transactions derived from a reportable amount, separate from the other transactions alleged in the structuring count, the conduct should have been charged in as many counts as hoards that were

13132, 2015 WL 4098254, at *8 (11th Cir. July 8, 2015) ("To constitute structuring, a transaction of more than $10,000 must be broken into smaller increments, each of which typically is for less than $10,000, thus avoiding the reporting requirement. This is what makes it structuring.").  In other words, under the statutory language, a currency-transaction report is "require[d]" only where a "transaction" involves more than $10,000.  Inherent in such a requirement is the existence of at least $10,000.01 that could be deposited, withdrawn, exchanged or transferred by, through, or to a financial institution in a single transaction, without which a report would not be "require[d]."

And, even to the extent that § 5324(c)(3) may be viewed as ambiguous on this issue, the legislative intent is perfectly clear.  Indeed, the Senate Report accompanying the Money Laundering Crimes Act of 1986 expressly stated the statute's intention to exclude from the reach of the anti-structuring statute transactions arising out of a total sum of $10,000 or less:

> [T]he proposed amendment would create the offense of structuring a transaction to evade the reporting requirements, without regard to whether an individual transaction is, itself, reportable under the Bank Secrecy Act.  For example, a person who converts $18,000 in currency to cashier's checks by purchasing two $9,000

structured.  But no party in *Aunspaugh* ever raised that as an issue, so we had no reason to evaluate it, and we did not even purport to consider it.  For that reason, our affirmance of the Aunspaughs' convictions cannot be construed as confirmation that stringing together a bunch of otherwise-unchargeable transactions over a lengthy period to arrive at a total sum of more than $10,000 somehow renders the conduct structuring.

cashier's checks at two different banks or on two different days with the specific intent that the participating bank or banks not be required to file Currency Transaction Reports for those transactions, would be subject to potential civil and criminal liability. *A person conducting the same transactions for any other reasons or a person splitting up an amount of currency that would not be reportable if the full amount were involved in a single transaction (for example, splitting $2,000 in currency into four transactions of $500 each), would not be subject to liability* . . . .

S. Rep. No. 99-433, 22 (1986) (emphasis added).

This commentary could not state more straightforwardly that a person simply cannot commit the offense of structuring if he does not control more than $10,000, even if he has the specific intent to evade a reporting requirement. Despite this fact, the Court suggests that we look not at the amount that the person controlled at the time that she conducted a transaction of $10,000 or less but instead at the endpoint of all of the transactions that the government happens to choose to charge to see whether they add up to more than $10,000. Maj. Op. at 15-16 & 16 n.4. I'm guessing that they always will.

I respectfully disagree with the Majority's approach. This interpretation does not account for the phrase "*splitting up* an amount of currency that would not be reportable if the full amount were involved in a single transaction[.]" S. Rep. No. 99-433, 22 (1986) (emphasis added). The phrase lays bare congressional intent that a person necessarily control a hoard of more than $10,000 before she

35

can structure transactions. To "split" means "[t]o separate . . . ; disunite." *Split*,

The Am. Heritage Dictionary of the English Language (4th ed. 2000). A person

cannot disunite something that does not yet exist. Instead, as the two examples in

the commentary illustrate—one involving the splitting up of $18,000 into two

transactions of $9,000 each and the other involving the splitting up of $2,000 into

four transactions of $500 each—a united whole must first exist before it can be

disunited.[3]

We are not at liberty to construe the statute more broadly than it was written

and than we know Congress intended. But that is what the Court's opinion does

today in holding that a person may violate § 5324(a)(3), even if he lacks control

over more than $10,000.

---

[3] While the Majority states that it "express[es] no view whether the Government may charge a defendant with more than one count of structuring under the circumstances presented by this appeal[,]" Maj. Op. at 17 n.5, the Majority's view nonetheless suggests that there is never any reason to charge more than one count of structuring against a particular defendant—indeed, under the theory announced today, it may well be wrong to charge more than one count of structuring against a single defendant because every cash transaction of $10,000 or less during the statutory period constitutes part of a giant, single structuring violation since we look solely to the total amount transacted during the statutory period. To illustrate the problem with this theory, consider the facts here. Significantly, under the Majority's theory, the government concedes that Sperrazza's indictment erred in charging two counts of structuring where it should have charged a single count by grouping the individual transactions into one oversized transaction encompassing all transactions occurring in both 2007 and 2008. This cannot be correct. Sperrazza's money derived from cash and checks that his patients used to pay him in connection with his anesthesiology practice. Charging two years of transactions in a single count is like saying that all of Sperrazza's transactions between January 2007 and December 2008 were smaller pieces of a single giant sum that Sperrazza knew he would ultimately possess. It holds Sperrazza liable in January 2007, for monies he received from patients in, say, July 2008, even though he could not have known, when he engaged in transactions in January 2007, that he would even see those patients or how much money he would receive from those visits.

36

***B.*** *** The Regulatory Definition of "Structuring" Cannot Support the Conclusion that the Anti-structuring Statute Covers Transactions Where the Person Did Not Have Control of At Least $10,000***

Nor does the regulatory definition of "structuring" somehow expand the breadth of § 5324(a)(3).  To begin with, the regulatory definition of "structuring" does not, as the Court suggests, necessarily indicate that a person can structure even where he has control over $10,000 or less.  The regulation provides,

> Structure (structuring).  For purposes of §1010.314, a person structures a transaction if that person . . . conducts or attempts to conduct one or more transactions in currency, in any amount, at one or more financial institutions, on one or more days, in any manner, for the purpose of evading the reporting requirements . . . .  "In any manner" includes, but is not limited to, the breaking down of a single sum of currency exceeding $10,000 into smaller transactions at or below $10,000.  The transaction or transactions need not exceed the $10,000 reporting threshold at any single financial institution on any single day in order to constitute structuring within the meaning of this definition.

31 C.F.R. § 1010.100(xx).  At least one treatise has characterized this definition as "presum[ing] the existence of an initial sum."  B. Frederic Williams, Jr., & Frank D. Whitney, *Federal Money Laundering:  Crimes and Forfeitures* 224 (1999).

A review of the notice and comment materials regarding the promulgation of this regulation supports this construction.  The Treasury Department based its definition of "structuring" on the concerns that Congress expressed in its reports in support of the enactment § 5324.  *See* Amendment to the Bank Secrecy Act

37

Regulations Relating to Domestic Currency Transactions, 53 Fed. Reg. 3023 (Jan. 23, 1989) (citing H.R. Rep. No. 746, 99th Cong., 2d Sess. 18-20 (1988); S. Rep. No. 433, 99th Cong., 2d Sess. 21-22 (1986)).

These reports show, in turn, that Congress enacted §5324(a) to address two specific problems. First, some courts had held that pre-§ 5324 law did not prohibit structuring of any type because the law required only that *financial institutions* report transactions involving at least $10,000 and imposed no obligations on bank customers. As a result, these courts concluded that customers' actions to cause a financial institution not to file a required report were not prosecutable.[4] Second, under pre-§ 5324 law, the Bank Secrecy Act did not even arguably prohibit conduct where a person with a reportable sum conducted smaller transactions at different banks or on different days to avoid the reporting requirement. Under those circumstances, the financial institutions would not have an obligation under the Bank Secrecy Act to file a report since the $10,000 threshold amount was not transacted in a single day at a single financial institution. *See* H.R. Rep. No. 99-746, 18-19 (1986) (citing *United States v. Anzalone*, 766 F.2d 676 (1st Cir. 1985);

---

[4] For example, if a customer divided a sum of more than $10,000 into smaller amounts and deposited the smaller amounts at three different branches of the same bank on the same day, a financial institution might not have realized that more than $10,000 had been transacted in a single day and had triggered the financial institution's obligation to file a Currency Transaction Report. Despite the fact that the customer intended to cause the bank not to file the required report, some courts held pre-§ 5324 that no cause of action existed to prosecute the customer's conduct since the law imposed no reporting obligations on customers—only on financial institutions.

*United States v. Varbel*, 780 F.2d 758 (9th Cir. 1986); *United States v. Denmark*, 779 F.2d 1559 (11th Cir. 1986)); *see also United States v. Phipps*, 81 F.3d 1056, 1060-61 (11th Cir. 1996).

Section 5324(a)(1) was designed to address the first problem by expressly criminalizing causing or attempting to cause a financial institution to fail to file a required report. *See Phipps*, 81 F.3d at 1060. Congress intended for § 5324(a)(3) to cover the second problem by creating a mechanism to prosecute the structuring of sums over $10,000 when the method of structuring did not trigger the financial institution's obligation to file a report. *Id.*; *see also* H.R. Rep. No. 99-746 at 19 (citing an incident where two people laundered $200,000 in cash in a day and a half by purchasing cashier's checks, each for less than $10,000, at several different banks).

In both cases, Congress was specifically concerned with conduct where a person who had within his control a reportable sum made smaller transactions to avoid triggering the filing of a required report. Thus, in the announcement of its final rule, the Treasury Department explained,

> The enactment of section 5324 clarified that all currency transaction structuring schemes designed to evade the reporting requirements are unlawful, regardless of whether the $10,000 threshold is met at a single financial institution on a single day.

39

Amendment to the Bank Secrecy Act Regulations Relating to Domestic Currency Transactions, 54 Fed. Reg. 3023 (Jan. 23, 1989). Against this background, it is clear that this explanation presumes a preexisting $10,000 sum, in implicit reliance on the purposes behind the enactment of § 5324(a)(1) and § 5324(a)(3).

The Court's invocation of the phrase "but is not limited to" does not somehow alter the natural and intended understanding of the regulatory definition. I agree with the Court that the phrase "but is not limited to" could be viewed as supporting the notion that "dividing a sum the defendant has in hand is not the only way to violate the statute." Maj. Op. at 11-12. But the conclusion that the regulation must therefore also include circumstances where a person does not have a right of control of at least $10,000 in cash does not necessarily follow. First, the phrase "but is not limited to" does not mean that the definition of "structuring" is without any limits. Instead, it means only that a person may be able to structure transactions in ways other than the example provided in the regulation.

Second, in fact, people have found ways to structure a sum of more than $10,000 other than by "dividing a sum the defendant has in hand" into packets of $10,000 or less each, that still otherwise meet the regulatory definition of "structuring." For example, defendants have also used creative billing mechanisms, such as requiring clients to pay in numerous small installments, to avoid ever having "in hand" a sum that would trigger the reporting threshold. *See,*

40

*e.g., United States v. Chaplin's, Inc.*, 646 F.3d 846, 847 (11th Cir. 2011) (affirming forfeiture order imposed after defendant was convicted of structuring a transaction by instructing a client to pay in "three separate bundles" to avoid the reporting requirement).

Similarly, the example that the Court provides today—a defendant who has checks totaling $9,000 and knows he will receive another bundle of checks totaling more than $10,000 tomorrow cashes his $9,000 in checks today to avoid the reporting requirement—also can meet the regulatory definition of "structuring" that Congress intended when it enacted § 5324(a)(3). If the defendant had an ability to control the checks in both packages and cashed the first group before the second group arrived in order to evade the reporting requirement, I agree with the Majority that the defendant would be guilty of structuring.

Unlike the broad definition of "structuring" that the Court adopts today, this form of structuring satisfies the definition of "structuring" that Congress intended when it enacted the anti-structuring statute. Nevertheless, it does not fall neatly within the express example of structuring that the regulatory definition supplies, so it is covered by the "but is not limited to" phrase.

Finally and most important, reading the regulation as broadly as the Court does today causes the regulation to conflict with congressional intent in enacting the anti-structuring statute. But courts "must reject administrative constructions

which are contrary to clear congressional intent." *Chevron, U.S.A. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9, 104 S. Ct. 2778, 2781 n.9 (1984) (citations omitted). Indeed, "a regulation must be interpreted so as to harmonize with and further and not to conflict with the objective of the statute it implements." *Emery Min. Corp. v. Sec'y of Labor*, 744 F.2d 1411, 1414 (10th Cir. 1984). Because the Court's interpretation of the regulation directly conflicts with congressional intent in enacting § 5324(a)(3), I cannot agree with it.

## C.      *The Precedent from the Seventh and Eighth Circuits Is Not Persuasive*

It is true, as the Court points out, that two other circuits have reached the contrary conclusion, holding that a person need not have a right to control a sum of more than $10,000 before that person can engage in structuring. *See* Maj. Op. at 13 (citing *United States v. Sweeney*, 611 F.3d 459, 471 (8th Cir. 2010), and *United States v. Van Allen*, 524 F.3d 814, 820 (7th Cir. 2008)). But neither of these courts appears to have engaged in any analysis of the language or considered the legislative intent of § 5324(a)(3). Instead, they appear to have predicated their interpretation of § 5324(a)(3) entirely on what they understood 31 C.F.R. § 1010.100(xx) to mean.

In *Van Allen*, for example, the analysis first acknowledged that the court had previously made the statement in *United States v. Davenport*, 929 F.2d 1169 (7th Cir. 1991), that the intent of the anti-structuring statute was to prevent individuals

42

from evading the reporting requirement "'by breaking their cash hoard into enough separate deposits to avoid activating the requirement.'"  *Van Allen*, 524 F.3d at 820-21 (quoting *Davenport*, 929 F.2d at 1173).  Then the court concluded simply,

> We did not hold, as Van Allen intimates, that this was the only method of proving structuring—indeed, we further defined "structuring" as "altering the form of a transaction in order to avoid activating the bank's duty to file a currency transaction report."  This definition meshes well with that in the Treasury regulation and accurately describes Van Allen's activities in this case.

*Id.* at 821 (internal citations omitted).  That's it.[5]

    *Sweeney*'s analysis followed a similar path.  The court began by setting forth the regulatory definition of "structuring" and then commented only that, "[i]n our view, the regulations accurately describe the various ways that a person may commit the offense of currency structuring in violation of § 5324(c)(3)."[6]  *Sweeney*, 611 F.3d at 471.  In support of this statement, the court relied on an

---

[5] Interestingly, though, the *Van Allen* Court expressly recognized concerns raised by its construction of § 5324:

> We acknowledge the issue raised by Van Allen concerning the implications of 31 U.S.C. § 5324(a)(3) for certain types of businesses.  Small enterprises dealing primarily in cash and seeking to avoid an illegal structuring charge could theoretically be forced to maintain large amounts of cash on hand until meeting the $10,000 threshold.

524 F.3d at 821.  But the court brushed off this problem with its construction, explaining only, "The fear raised, in this case at least, rings a bit hollow[,]" since Van Allen was not in that situation.  *Id.*

[6] Section 5324(c)(3) is analogous to § 5324(a)(3), but it prohibits structuring importation or exportation of monetary instruments, as opposed to structuring of domestic transactions involving financial institutions.

unpublished opinion from our Court, which, in turn cited *Phipps* for the proposition that, "[b]y its plain language, the statute prohibits transactions of less than $10,000 that are intended to evade reporting requirements." *Sweeney*, 611 F.3d at 472 (quotation marks omitted). Beyond citing the regulation and referring to *Phipps*, the rest of the analysis relied exclusively on *Van Allen*. *See id.*

But even *Sweeney*'s reliance on *Phipps* was misplaced. *Phipps* did not hold or even suggest that § 5324(c)(3) criminalizes the structuring of amounts that add up to a total sum of less than $10,000. Instead, *Phipps* explained only the congressionally intended difference between §§ 5324(a)(1) and 5324(a)(3), as revealed by the Senate and House Reports accompanying the legislation. Nothing in *Phipps* purported to opine that § 5324(a)(3) authorizes structuring charges against a person who does not have control over at least $10,000 before he or she transacts in smaller amounts.

In short, neither *Sweeney* nor *Van Allen* set forth any analysis of the statutory language or considered the legislative intent of § 5324(a)(3). Instead, both cases effectively relied on only their own interpretation of the regulatory definition of "structuring." But, for the reasons previously explained, that cannot carry the day. So I respectfully disagree with the conclusions reached by *Sweeney* and *Van Allen*.

44

## D.     *The Rule of Lenity Does Not Abide the Court's Interpretation of §* *5324(a)(3)*

Finally, again, to the extent to which § 5324(a)(3) may be viewed as ambiguous about whether a person who controls $10,000 or less when that person transacts smaller amounts can commit a violation of § 5324(a)(3), the rule of lenity demands that we construe § 5324(a)(3) not to cover such conduct.  Under the rule of lenity, "ambiguous criminal laws [must] be interpreted in favor of the defendants subjected to them."  *United States v. Santos*, 553 U.S. 507, 514, 128 S. Ct. 2020, 2025 (2008).

> This venerable rule not only vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed.  It also places the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead.

*Id.*  If, as the Court holds, § 5324(a)(3) is "read . . . broadly, courts . . . run afoul of the Rule of Lenity, which insists that ambiguity in criminal legislation be read against the prosecutor."  *United States v. Jimenez*, 705 F.3d 1305, 1308 (11th Cir. 2013) (internal quotation marks omitted).  So, even assuming that, in a vacuum, the language of § 5324(a)(3) is susceptible to being construed the way the Court holds today, when "there are two rational readings of a criminal statute, one harsher than the other, the rule of lenity dictates that we are to choose the harsher one only

45

when Congress has spoken in language that is clear and definite." *United States v. Inclema*, 363 F.3d 1177, 1182 (11th Cir. 2004) (internal quotation marks omitted).

As previously discussed, a natural reading of § 5324(a)(3) leads to the conclusion that the statute contemplates covering only those transactions that originate from a sum that the defendant controls in excess of $10,000. *See Lang*, 732 F.3d at 1248 ("'for the purpose of evading' the reporting requirements" means that "the structured transaction must involve an amount that is more than $10,000; otherwise, evasion would not be necessary or possible because there would be no reporting requirement anyway."); *see also Aunspaugh*, 2015 WL 4098254, at *8. As this construction of the statute is rational and more lenient than the one the Court adopts today, it should govern.

## II.

Though I respectfully disagree with the Court's broad construction of § 5324(a)(3), I agree with the Court that the government nonetheless presented sufficient evidence to sustain a structuring conviction in this case under the definition of "structuring" that Congress intended. In fact, I would uphold conviction on two counts of structuring.

At trial, the government presented evidence that on 15 separate days in 2007 and 13 separate days in 2008, Sperrazza made cash deposits and cashed checks totaling over $10,000. The government's evidence demonstrated that when

46

Sperrazza conducted these transactions he first deposited the cash and then cashed the checks. Because of this sequence of events, the cash amounts Sperrazza had were necessarily distinct from the cash received from the checks, so Sperrazza had access to and control over $10,000 on each of those days but chose to transact in cash amounts under $10,000. In addition, as the Court recounted, the government introduced other evidence of Sperrazza's intent to evade the reporting requirements. Put simply, this evidence, when viewed in the light most favorable to the government, established that Sperrazza structured not one transaction over $10,000 in violation of § 5324(a)(3), but at least 28 discrete transactions of distinct sums over $10,000 in order to avoid the reporting requirements. *See Lang*, 732 F.3d at 1249.

Under plain-error review, which applies here because Sperrazza did not raise this particular error, even assuming plain error in how the indictment was charged, Sperrazza has shown no prejudice. *See United States v. Vernon*, 723 F.3d 1234, 1260 (11th Cir. 2013) (reviewing for plain error unpreserved challenges to an indictment and affirming convictions where, even if plain error had occurred, defendant failed to prove prejudice). All of the smaller transactions comprising each of the reportable sums during 2007 and 2008 were set forth in the two separate structuring counts in the indictment, so Sperrazza had notice of the

47

transactions that the government contended constituted structuring.[7] For these reasons, I concur in the majority's ultimate conclusion that Sperrazza's conviction must be affirmed.

---

[7] The government also presented evidence that Sperrazza received packages of patient checks above $10,000, on five occasions: (1) February 14, 2008, totaling $10,763.38; (2) March 20, 2008, totaling $11,765.17; (3) April 3, 2008, totaling $10,416.75; (4) May 15, 2008, totaling $10,805.13; and (5) October 10, 2008, totaling $14,385. To the extent that any of the transactions listed in the structuring counts included cashed checks from these hoards, sufficient evidence also exists to uphold the convictions on these grounds, since the government also set forth sufficient evidence of intent to evade the reporting requirements.